BRASHIER *v.* STATE.

(In Banc. Dec. 11, 1944.)

[20 So. (2d) 65. No. 35681.]

Cecil **A. Rogers**, of Meridian, for appellant.

Greek L. Rice, Attorney General, by Geo. H. Ethridge, Assistant Attorney General, for appellee.

Argued orally by **Cecil Rogers**, for appellant, and by **Geo. H. Ethridge**, for appellee.

**Roberds, J.,** delivered the opinion of the court.

Appellant was convicted of the unlawful possession of intoxicating liquor and appeals.

The trial judge testified on the merits at the trial. Appellant says this was reversible error. This is the picture: The District Attorney, while putting on the case for the state, called the Judge to the witness stand. The Judge was sworn. He then testified in substance that he received the affidavit and issued the warrant for search of the premises; that after the arrest of Brashier, the District Attorney called the Judge for the purpose of fixing bond; and Brashier was brought to his office, accompanied by the District Attorney, and that Brashier "stated to me that he regretted very much being involved in this affair; that it was nearly going to kill him and his family for him to be brought into the matter; and that he and Bob Burwell were partners in business. . . . That they had agreed to buy this whiskey for $11,500.00, that Bob Burwell was to put up half the money and he to put up the other half, but that when it became time to pay for the whiskey that Mr. Burwell only had $2,500.00, and that he put up the difference of $9,000.00. That the whiskey was to be sold, he was to get his money back first, and then they would divide the profits. He asked me if it wasn't someway that we

could save him the embarrassment of handling it through the courts. That he · was prominently connected in church circles and that his wife was affiliated with church circles. And I told him that there was no way that I knew of. He asked me was it any chance to get the whiskey back, and I told him no, sir, that under the law that I would have no alternative, that the matter would have to be handled through the legal channels. It is my opinion that the whiskey would be destroyed.''

The District Attorney had already testified that Brashier had previously told him substantially the same thing. The only other evidence against Brashier was that he was at the scene where the whiskey was found by the officer, which scene was in an outhouse on the lands of one Burwell.

Brashier testified that he had stopped at Burwell's place while on his way to Jackson, and that he had no interest whatever in the whiskey, but had loaned to Burwell money at eight per cent interest, and that he was much embarrassed by being arrested and did not want that matter to get in the papers, and that this was what he told the District Attorney and the Judge. The District Attorney asked him this question, ''Then you heard the Judge testify and that is not true?'' He answered, ''I did not tell him, only I loaned the man the money.''

At common law, one might be judge and witness at the same time, but modern authority holds otherwise, especially in jury trials and where there is only one judge presiding and the testimony is upon the merits of the controversy. There are impelling reasons for such holding.

The functions of a judge and a witness are incompatible. It is the duty of the judge to pass upon the admissibility of the evidence, the competency of the witness, to punish · witnesses for contempt on refusal to answer proper questions, and generally to exercise over witnesses all of the powers of a court needed for the protec-

tion of the rights of the parties and administration of justice in the case. But, as a witness, he has the right to refuse to answer incriminating questions and is entitled to the protection of the court in this, as well as in many other respects. It is utterly impossible for one person to exercise these rights and perform such duties at one and the same time.

Again, if motions are made to exclude for insufficiency of evidence, or for new trial, the judge must pass upon the credibility and weight of his own evidence. That very thing was done in this case, because appellant, at the close of the state's testimony, made a motion for a peremptory instruction because the evidence for the state had failed to show that the defendant was guilty of the crime charged, and the trial Judge passed upon and overruled that motion.

It is a tribute to our judicial system that the words and actions of trial judges have great weight with trial juries. They observe closely the judge's actions and weigh carefully his words, and are greatly influenced by what they think are his reactions. It is impossible to ascertain the weight and influence of the testimony of the trial judge with the jurors. The jurors are subordidate to the judge. He has large control over them. They are necessarily embarrassed to weigh his evidence against that of another and find for the other. That very test was involved here because Brashier denied that he told the Judge the things to which the Judge testified. The issue was presented sharply. The jury had to weigh the conflicts in the statements. And, while the trial judge may be very reluctant to take the stand and complies with the request solely to serve the ends of justice by making a full disclosure, which unquestionably was the case here, the greater the character and standing of the judge the greater the danger of this procedure. It is the supreme duty of a trial judge, in so far as it is humanly possible, to hold the scales of justice evenly balanced between the litigants. As a wit-

ness, regardless of how careful and conscientious he may be, he necessarily takes on the appearance of a partisan, endeavoring to uphold by his testimony one side against the other, and to some extent at least detracts from the dignity and impartiality of his office.

Further, as a witness, he is subject to cross-examination by counsel for the litigant against whom his testimony is directed, and his credibility as a witness, and the veracity of his testimony, intrinsically and as compared to other evidence in the case, are proper matters for discussion and comment by such counsel before the jury, necessarily producing embarrassment and conflict and perhaps open hostility between the trial judge and such counsel.

Mississippi has no statute directed to this situation, but Section 1530, Code of 1942, prohibits the trial judge from summing up or even making comment upon the testimony, or charging the jury as to the weight of the evidence, and he cannot instruct the jury orally. Clearly, he should not be permitted to take the stand as a witness and testify upon the merits in direct contradiction to what a defendant has testified on the stand. If a judge has notice that he will be called as a witness, he should arrange for someone to try the case; and if he has not sufficient notice to make such arrangement, then he should refuse to testify as a witness in the case.

It will be noted that we are not dealing with contempt proceedings, happenings in the presence of the court during the trial, or other like situations. This opinion is confined to the case made, and we hold it was reversible error for the same person to act as trial judge and witness under the circumstances here shown. See 28 R. C. L. 468, Section 56; Powers v. Cook, 48 Okl. 43, 149 P. 1121, L. R. A. 1915F, 766 and Note; Estes v. Bridgeforth, 114 Ala. 221, 21 So. 512; Rogers v. State of Arkansas, 60 Ark. 76, 29 S. W. 894, 31 L. R. A. 465 and Note 46 Am. St. Rep. 154; and 6 Wigmore on Evidence (3 Ed.), page 586, Section 1909.

But, it is said in this case that timely objection to such procedure was not made. It is true that no objection was made until the Judge had finished making the quoted statement, but immediately thereafter counsel moved that the evidence be stricken, and if not, for a mistrial, stating that they were embarrassed to cross-examine the witness, and saying frankly they were at a loss to know just what to do and how to proceed. The motion to exclude or for a mistrial were overruled by the Judge. This was an unexpected and unusual situation, and we do not think that appellant was charged with the duty of anticipating it, and that he should now be denied the privilege of invoking his rights because objection was not made before the testimony was given.

Appellant also says it was reversible error to permit the statement of the District Attorney as to what he claimed appellant said to him to go to the jury without first showing that such alleged statement was made freely and voluntarily, without hope of reward or fear of punishment. Objection was duly made to it upon that ground and overruled. We do not pass upon this because most likely this error, if it is error, will not again occur on retrial of the case.

Reversed and remanded.