519 So.2d 418 (1988)
Samuel Tony WEST, a/k/a Tony Wells West
v.
STATE of Mississippi.
No. DP-61.
Supreme Court of Mississippi.
January 13, 1988.
William B. Kirksey, Kirksey & DeLaughter, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., and Donald G. Barlow and Felicia C. Adams, Sp. Asst. Attys. Gen., Jackson, for appellee.
EN BANC.
ROY NOBLE LEE, Chief Justice, for the Court:
Samuel Tony West has appealed from a conviction of capital murder and judgment imposing the death penalty, entered in the Circuit Court of Warren County, Honorable John E. Ellis, presiding, and assigns ten (10) errors in the trial below. We reverse and remand the case for a new trial on both the guilt phase and the sentencing phase.
This is the second appearance of this case before the Mississippi Supreme Court. After the first trial and imposition of the *419 death penalty, this Court reversed and remanded the case to the lower court because the State presented evidence of two murders committed in Georgia previous to the robbery/murder of Kirby Phelps in Warren County, Mississippi, and the introduction at the sentence phase of Georgia convictions, which recited that West had been found guilty of capital murder and sentenced to be executed. See West v. State, 463 So.2d 1048 (Miss. 1985). The facts of the homicide are reported in West v. State, supra, and we relate only such facts as will render a coherent understanding of the case presently before us.
On December 13-14, 1982, Tony West and Kenneth Avery Brock drove from Chattooga County, Georgia, on Interstate Highway 20 west through Alabama into Mississippi and Warren County. They stopped at Bovina, Warren County, in a rest area and went to sleep. The next morning on December 15, 1982, West and Brock awakened and saw a brown Toyota automobile parked nearby. Inside was 26-year-old Navy Lt. Kirby Phelps, who also had stopped at the Bovina rest area and was asleep.
West and Brock were out of money and needed different transportation from the jeep in which they were traveling. They went to the Toyota, awakened Phelps, and, at gunpoint, handcuffed him with cuffs taken in Georgia. While Brock searched the Toyota for valuables, West took Phelps and, with the pistol pointed at him, walked two hundred to three hundred yards into woods adjoining the rest area. During that time, West shot Phelps three times in the head, killing him, and left his body in the wooded area. Later that day, Civil War relic hunters discovered Phelps' body and reported it to the Warren County sheriff.
West and Brock drove on Interstate 20 into Louisiana, where they abandoned the jeep, but continued in the stolen Toyota to Austin, Texas. There they pawned the stereo system, a camera and cassette tapes found in the automobile. They parted ways, and West drove the Toyota eastward back to his hometown of Chattanooga, Tennessee, and, on December 25, 1982, voluntarily surrendered to police.[1]

I.

THE INVOLVEMENT OF THE TRIAL JUDGE IN THE CASE FOR THE 
PROSECUTION.

Facts

A.
Appellant contends that the trial judge was actively involved in the case on behalf of the prosecution, conducted by District Attorney Frank Campbell, and that the appellant did not receive a fair trial because of the aggressive assistance of the trial judge on behalf of the prosecution. We set out a sample of the record in considering this assigned error.
CROSS-EXAMINATION OF APPELLANT IN THE PRESENCE OF THE JURY, DURING THE SENTENCING PHASE:
Q. All right. Do you affirm or do you deny that you told that to Sheriff McConnell on December the 25th of 1982?
A. I am saying that I am telling the truth. I walked him in the woods. Me and him had conversation while we was walking.
BY MR. CAMPBELL: The Court's indulgence just one second.
(Whereupon a brief pause was had.)
BY THE COURT: What was the extent of the conversation you had? Were *420 you in front of him, beside him or behind him?
BY THE WITNESS: I guess at this time 
BY MR. KIRKSEY: (Interposing) Your Honor, I believe the witness has already answered that in his direct examination from counsel.
BY THE COURT: Yes, sir.
BY MR. DeLAUGHTER: Your Honor, we further object to the Court conducting an examination of the witness in the presence of the jury. The district attorney is 
BY THE COURT: (Interposing) Well, he is leaving something blank here. He said he had conversation 
Q. Every shot you ever fired at Kirby Phelps, he was facing you.
BY MR. DeLAUGHTER: Objection, Your Honor.
BY MR. CAMPBELL: (Interposing) Not being able to 
BY MR. DeLAUGHTER: (Continuing) No, I object to any question I deem proper and the Court can rule on it, Mr. Campbell.
BY THE COURT: The objection is overruled.
BY MR. DeLAUGHTER: I haven't even stated my grounds, Your Honor. You don't want to hear my grounds?
BY THE COURT: He is on cross examination. Would you approach the bench and assign your grounds. Approach the bench and assign your grounds.
BY MR. KIRKSEY: Approach the bench and assign your grounds.
BY THE COURT: But I don't want speaking that would guide a witness on how to give an answer. So state your grounds 
* * * * * *
[BY MR. CAMPBELL]:
Q. And where did that happen?
A. It was slipped to me.
Q. Okay. I know, but where?
BY MR. DeLAUGHTER: Your Honor, we object.
BY THE COURT: Ask him where or when? It could have been two hours earlier.
BY MR. CAMPBELL:
Q. Okay. When and where and from whom were you 
BY THE COURT: Not when, where and whom just to when is all.
BY MR. CAMPBELL:
Q. When were you given or supposedly given this LSD?
The following excerpts occurred at the bench or while the jury was out of the courtroom.
BY THE COURT: Where are you going with this question?
BY MR. CAMPBELL: He is probably going to talk about something about parole.
BY THE COURT: My god, you are going to get a reversal error. They are not suppose [sic] to know about parole.
BY MR. CAMPBELL: That is [sic] matters in the question.
BY THE COURT: You had better be quiet on that question.
BY MR. CAMPBELL: What are they asking this question for?
BY THE COURT: You let them  you let him repeat the answer back to them on it, but parole means 
BY MR. CAMPBELL: (Interposing) All right.
BY THE COURT: (Continuing) You can't bring that out.
BY MR. CAMPBELL: Why do they ask this question?
BY THE COURT: Do what?
BY MR. CAMPBELL: Why do they ask this question?
BY MR. DeLAUGHTER: Your Honor.
BY THE COURT: They can just set you up in a trap and go in there and try to ask about parole. You had better leave that alone.
BY THE COURT: You may continue, Mr. Campbell.
BY MR. CAMPBELL: We withdraw the question and we have no further questions of the witness.
* * * * * *

*421 BY THE COURT [to the District Attorney]: But what I told them, I have never had this kind of testimony come in before. They could only offer him as an expert. They have left some [sic] authority on my desk that I haven't reviewed yet. You might want to call the Attorney General's Office and see if they can find some authority and, you know, as far as pro or con to the issue of him qualifying as an expert during the noon hour.
BY THE COURT: (Interposing) You don't have to be such a heavy weight to prove that, you just walk in to that. There is [sic] ways of getting evidence in without just jumping into the things.
BY MR. CAMPBELL: All right.
BY THE COURT: You can't prove flight from Georgia into the Mississippi matter. Instead of dressing it up as flight, Mr. Campbell, there are ways of doing it. Why were you in Mississippi, why didn't you go to a hotel, why didn't you, why did you have to stay at the roadside park.
BY MR. DeLAUGHTER: Your Honor.
BY THE COURT: I know the answers because the answers are in West I. The reason he didn't go to  they were out of money, they were out of gas.
BY MR. DeLAUGHTER: Your Honor.
BY THE COURT: You have got all of the statements as to why they are needing somebody to rob. But, robbery goes into the principle [sic] aspect of it. Why do they want to get rid of the jeep they were in instead of just getting as money and going.
BY MR. DeLAUGHTER: Your Honor.
BY MR. KIRKSEY: Your Honor.
BY THE COURT: You want the man's mind that pulled that trigger here.
BY MR. DeLAUGHTER: Your Honor.
BY THE COURT: Now, wait just a minute. The defendants have brought in, they have had the fellow examined once in Georgia, before he went to trial. He has been examined here by the psychiatrist on three different times. Twice in the last week and they keep coming up with something is wrong with him. And, he has got to have, something was wrong with his mind, I want a course of conduct to the trial. They are wanting me to muffle, muzzle the district attorney from going into matters that you have the right on cross examination. But, you can't walk around closing. You have got to ask them in a way that it has some relations to the part of the trial that the jury is now passing on.
BY MR. DeLAUGHTER: Your Honor, for the record, we object.
BY MR. CAMPBELL: Wait, I have 
BY MR. DeLAUGHTER: (Interposing) We object to the extensive instructions from the Court to the district attorney as to how to proceed with his cross examination.
BY THE COURT: Well, I am explaining to him because if it comes floppy flop I have got to sustain your objections.
(R. 906, 917-18, 932, 479-80, 868-69, 953-54)
We have carefully examined the eight-volume record and find that there are thirty (30) instances where the trial judge improperly, or unnecessarily, interjected himself into the proceedings. Of those thirty instances, twenty are of the type which may be characterized as coaching the district attorney.[2] On nine occasions, the trial judge posed questions to witnesses where the district attorney's questions were ineffective. The questions by the trial judge generally served to strengthen the prosecution's case.
During closing argument for the prosecution, on two occasions, the appellant objected to portions of the prosecution argument. Overruling the objections, the court commented: "There is evidence in support of that argument. The objection is overruled. The jury is the ultimate decider of the facts." and "That is for the jury to determine. There is a basis for evidence that would support it. The objection is overruled."

*422 B.
After the sentencing phase, which resulted in imposition of the death penalty by the jury, attorneys for the appellant filed a motion for new trial. One of the grounds was to the effect that the sheriff of Warren County had been observed in the area near where the jury was sequestered and it indicated that the sheriff had made an improper contact with the jury. Attorneys for appellant exhibited affidavits to the motion on that point and sought an evidentiary hearing. The trial judge struck the affidavits from the record and denied an evidentiary hearing on the motion, being of the opinion that the attorneys would have a conflict in the event they testified and that such procedure was impermissible.
The trial judge required those attorneys, who had represented appellant from the beginning, to withdraw from the defense of the case, appointed the Honorable Lewis Fields to represent the appellant on a separate hearing, not a part of the trial record, which was designated as a habeas corpus proceeding. The trial judge then proceeded with a hearing in that cause, entirely separate from the West capital murder case, and required the appellant's former counsel (Kirksey & DeLaughter) to take the stand, over their objection. He permitted the affidavits, which were stricken in the West capital murder cause, to be introduced in the habeas corpus proceeding. The latter proceeding was appealed by appellant to this Court, and the two causes were consolidated here.

Law

C.
The State argues that objections were not made to the trial judge's involvement for the prosecution, or to many of them.[3] That argument is answered simply by noting that there were sufficient objections raised and made throughout the trial to preserve the question. Brashier v. State, 197 Miss. 237, 20 So.2d 65 (1944), was reversed because the trial judge testified about the facts of the case, prior to indictment. The facts, involving a trial judge who testified on the trial, are different from those in the case sub judice, but the reasoning of the Court is applicable here. The Court said:
It is a tribute to our judicial system that the words and actions of trial judges have great weight with trial juries. They observe closely the judge's actions and weigh carefully his words, and are greatly influenced by what they think are his reactions. It is impossible to ascertain the weight and influence of the testimony of the trial judge with the jurors. The jurors are subordinate to the judge. He has large control over them.... It is the supreme duty of a trial judge, in so far as it is humanly possible, to hold the scales of justice evenly balanced between the litigants. As a witness, regardless how careful and conscientious he may be, he necessarily takes on the appearance of a partisan, endeavoring to uphold by his testimony one side against the other, and to some extent at least detracts from the dignity and impartiality of his office.
* * * * * *
It will be noted that we are not dealing with contempt proceedings, happenings in the presence of the court during the trial, or other like situations. This opinion is confined to the case made, and we hold it was reversible error for the same person to act as trial judge and witness under the circumstances here shown. [Citations omitted]
197 Miss. at 242-43, 20 So.2d at 66-67.
In Thompson v. State, 468 So.2d 852, 854 (Miss. 1985), the Court said:
It is a matter of common knowledge that jurors . .. are very susceptible to the influence of the judge... jurors watch his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the *423 other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury, to avoid prejudice to either party.
See also Norman v. State, 385 So.2d 1298 (Miss. 1980); Stallworth v. State, 310 So.2d 900 (Miss. 1975); Shore v. State, 287 So.2d 766 (Miss. 1974); Green v. State, 97 Miss. 834, 53 So. 415 (1910).
We have recognized the danger that a trial judge generates by indicating or showing his attention to certain matters in the trial which may communicate to the jury the impression that such evidence or testimony is important or unimportant, and the very position of a judge during trial makes each comment unusually susceptible of influencing a juror or the jury. Shelton v. Puckett, 483 So.2d 354 (Miss. 1986); Hannah v. State, 336 So.2d 1317 (Miss. 1976); Thompson v. State, supra; Stubbs v. State, 441 So.2d 1386 (Miss. 1983); Fulgham v. State, 386 So.2d 1099 (Miss. 1980); Myers v. State, 99 Miss. 263, 54 So. 849 (1911).
In United States v. Hickman, 592 F.2d 931 (6th Cir.1979), commenting on the requirement of impartiality, the Court said:
The problem is that potential prejudice lurks behind every intrusion into a trial made by a presiding judge. The reason for this is that a trial judge's position before a jury is "overpowering." United States v. Hoker, 483 F.2d 359, 368 (5th Cir. 1973). His position makes "his slightest action of great weight with the jury." United States v. Lanham, 416 F.2d 1140, 1144 (5th Cir.1969), citing Adler v. United States, 182 F. 464 (5th Cir.1910).
592 F.2d at 933. See also United States v. Tilton, 714 F.2d 642 (6th Cir.1983); United States v. Carabbia, 381 F.2d 133 (6th Cir.1967); United States v. Hill, 332 F.2d 105 (7th Cir.1964).
With reference to the habeas hearing, the trial judge apparently was of the opinion that ethics prohibited appellant's attorneys from testifying on the motion for new trial. Without addressing the principle other than how this case and similar cases are affected by it when the constitutional rights of defendants are involved, we refer to the decisions and to the codes of professional responsibility. In Gradsky v. State, 243 Miss. 379, 137 So.2d 820 (1962), this Court held that in criminal prosecutions the accused may call his attorney as a witness where the attorney has evidence vital to the defense.
We have pointed out in the case of Brooks v. State, 209 Miss. 150, 46 So.2d 94, that "Constitutional rights in serious criminal cases rise above mere rules of procedure." The court may admonish an attorney when it appears that he knew in advance that he would be called upon to testify in a case, for taking active part in the trial of a case, but the court cannot refuse an accused the right to introduce competent evidence in his favor because it may appear that an attorney has violated an ethical rule.
243 Miss. at 384, 137 So.2d at 821. See also Richardson v. State, 436 So.2d 790 (Miss. 1983); Pittman v. Currie, 414 So.2d 423 (Miss. 1982).
In Currie, supra, the Court said:
[A] lawyer should not testify unless circumstances arise which are not anticipated and unless his testimony is necessary to prevent a miscarriage of justice. In the rare case where the attorney's testimony is needed to protect the client's interest, not only may the attorney testify  justice requires that he do so.
414 So.2d at 427.
The trial judge, in the case at bar, relied on DR 5-101(B)(4), Mississippi Code of Professional Responsibility, in excluding the testimony of appellant's attorneys, by affidavit or otherwise, from the present case No. DP-61. The American Bar Association Standing Committee on Ethics and Professional Responsibility, in interpreting DR 5-101(B)(4), has set out circumstances in which an attorney should be allowed to testify for his client without necessitating withdrawal:

For example, where a complex suit has been in preparation over a long period of time and a development which could not be anticipated makes the lawyer's *424 testimony essential, it would be manifestly unfair to the client to be compelled to seek new trial counsel at substantial additional expense and perhaps to have to seek a delay of the trial. Similarly, a long or extensive professional relationship with a client may have afforded a lawyer, or a firm, such an extraordinary familiarity with the client's affairs that the value to the client of representation by that lawyer or firm in a trial involving those matters would clearly outweigh the disadvantages of having the lawyer, or a lawyer in the firm, testify to some disputed and significant issue. By the same criterion, a lawyer having knowledge of misconduct of a juror during the trial of a case is not required to withdraw as counsel in the proceedings in order to testify as to facts of which he has knowledge.

ABA Formal Opinion 339 (1975) (Emphasis added).
We are of the opinion that this assignment has merit and the case must be reversed and remanded for a new trial because of the involvement and participation in the trial below by the presiding judge. While the record in the so-called habeas corpus proceeding does not contain evidence and facts which would require reversal of this case (DP-61), the trial judge erred in declining to hear the point raised on the motion for new trial; in requiring the trial counsel for appellant to withdraw; in appointing another attorney for the appellant at that stage of the trial; and in hearing the matter separately from the West murder case.

II.

THE LOWER COURT ERRED IN DENYING APPELLANT AN "AGEE" HEARING TO CHALLENGE THE VOLUNTARINESS OF HIS CONFESSIONS.
Appellant challenged by pretrial motion the voluntariness of his December 25 and 27, 1982, confessions and requested an evidentiary hearing. The motion was denied by the trial judge on the basis that, since the issue of voluntariness had been determined at appellant's first trial, and the Mississippi Supreme Court had expressly found no error in that ruling, the determination made in the first trial was binding. Thus, there was no need to investigate the issue further.
Appellant stated his desire to introduce new evidence not considered at the first trial, including a handwriting expert who would provide testimony as to whether or not the signature on the confession was that of the appellant. He also proposed to introduce a pharmacologist to testify as to whether the appellant's drug use affected his mental state. During the trial on West II, appellant objected to the introduction of the confessions and again requested an Agee hearing which was denied for the above-stated reasons.
Appellant argues here that, since both the conviction and the sentence were reversed on his first appeal, this Court intended to remand the cause for a new trial on all issues and that
[T]o completely bar the defendant from contesting the voluntariness of his confessions at a new trial simply because they are admitted into evidence at his first trial is to assume that the defense counsel in his new trial would ask the exact questions as defense counsel in West I and that the witnesses would give the exact same responses as in the previous record.
(Appellant's Brief at 16).
In Jones v. State, 517 So.2d 1295 (Miss. 1987), appellant's conviction was reversed and the case was remanded for a new trial. In the appeal on the first conviction, Jones argued the issue of (1) the legality of his arrest, (2) the voluntariness of his confession, and (3) the sufficiency of the indictment. Although the conviction was set aside, this Court resolved those three specific issues adversely to appellant Jones.
In the second trial, Jones again raised the issues. However, on the voluntariness of the confession, Jones incorporated a transcript of the suppression hearing at the first trial into the record of the second trial. No new evidence was offered on any *425 of the issues, and Jones simply advanced the same argument which he had asserted on the appeal from his first conviction. We held that the trial court correctly rejected the identical argument on the same evidence at the second trial. The decision was based not upon the fact that the issues had been raised in a prior appeal, but because Jones' arguments advancing the issues were supported by the evidence and law argued and rejected in the first appeal. Therefore, the distinction between Jones and West is clear.
We hold that, where the case has been reversed and remanded for a new trial, a trial de novo follows. The trial court hears the case as if for the first time and considers all matters as though there had been no prior trial. See Hobbs v. State, 231 Md. 533, 191 A.2d 238 (1963); State v. Darwin, 161 Conn. 413, 288 A.2d 422 (1971); United States v. Akers, 702 F.2d 1145 (D.C. Cir.1983). See also Commonwealth v. Oakes, 481 Pa. 343, 392 A.2d 1324 (1978); where the Court held that the defendant is
entitled to a wholly new trial, whether before the same or a different judge, unfettered by the rulings, pro or con, made at the first trial, and with the right to have new rulings on the evidence, points for charge and other matters which arise in the course of a trial.
481 Pa. at 348, 392 A.2d at 1327.
This Court has decided the question in civil cases that, as a general rule, when the Court reverses and remands the case is to be tried de novo on all issues. Weems v. American Security Ins. Co., 486 So.2d 1222, 1226 (Miss. 1986). Further, regarding cases where the trial judge grants a motion for new trial, the old trial is out of the picture for all purposes. Its verdict is as though it had never been. Gill v. W.C. Fore Trucking, Inc., 511 So.2d 496 (Miss. 1987).
We are of the opinion that the refusal of the lower court to grant a suppression/Agee hearing on the voluntariness of the confessions constituted reversible error.

III.

THE LOWER COURT ERRED IN EXCLUDING THE TESTIMONY OF WILLIAM DONALD ATES DURING THE GUILT AND SENTENCING PHASES.
Appellant offered as an expert witness William Donald Ates, a ballistics expert, for the purpose of explaining the physical evidence, especially the bullet wound to the back of the victim's head. The lower court refused to permit the expert to testify, even though he recognized Ates as an expert, on the ground that Ates' testimony would be cumulative to that of appellant West and merely represented and attempt by defense counsel to bolster their account of Phelps' shooting.
The testimony of Ates was particularly relevant, since the State represented to the jury in opening statements, that it would show West's "methodical execution" of Phelps. Further, when asked by the district attorney on cross-examination to explain the bullet wound to the back of Phelps' head, West responded: "Sir, I am no expert. All I can do is tell you what happened." Appellant asserts that, absent Ates, the only thing the jury heard from the defense was what happened (from West himself) and heard nothing as far as an explanation of how it physically was not inconsistent with the evidence. Compounding the refusal, the prosecution stated in closing arguments:
There is no question that he actually killed. He says he didn't intend to kill. But how did Lt. Phelps get that bullet hole in the back of his head? Why was he shot three times in the head? Once behind the ear. You saw his demonstration here of how it happened. He says Lt. Phelps was coming at him. He is trying to make some sort of self-defense type of argument.
* * * * * *
If Lt. Phelps was coming at him, how did he get shot back here?
(Whereupon Mr. Vollor points to the back of his head).

*426 How did he get shock back there? He couldn't explain that. Why? Cause the way he described it is not the way it happened. Lt. Phelps was brutally murdered, shot in the back of the head.
* * * * * *
Was this capital offense heinous, atrocious, or cruel? I say, "Yes, it was." Again, I would point out the shot in the back of the head. There is much discussion about where the back of the head was; but you have seen the drawing, you can look at the pictures and describe once behind the ear.
(R. 993, 997)
Expert witnesses need not be infallible or possess the highest degree of skill, but, rather, only need have such skill, knowledge or experience in that field or calling as to make it appear that the opinion or inference will probably aid the trier in his search for the truth. Henry v. State, 484 So.2d 1012 (Miss. 1986). A properly qualified and examined expert witness may provide the jury with the testimony which is potentially helpful in deciding the issues. Hollingsworth v. Bovaird Supply Co., 465 So.2d 311 (Miss. 1985).
The law is now well established that the Eighth and Fourteenth Amendments require that the sentencer not be precluded from considering, as a mitigating factor, any aspect of a defendant's character, record, or any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Jordan v. State, 518 So.2d 1186 (Miss. 1987).
Exclusion of the testimony of William Donald Ates in West II constitutes reversible error.

Conclusion
We have examined the other assigned errors on this appeal, and have concluded that there is either no merit in them, or that they should not occur again on retrial. Therefore, we do not address them.
The judgment of the lower court is reversed, and the cause is remanded for a new trial on all issues.
REVERSED AND REMANDED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, concur.
NOTES
[1] On December 12, 1982, Brock and West visited the home of Charles Scudder, a pharmacologist and former university professor, and Joseph Odum near Summerville, Georgia. On that date, the four individuals were drinking wine and sniffing Toulene, a solvent. After about two hours of this activity, they became well intoxicated. Brock shot and killed Joseph Odum. Scudder attempted to escape and was shot in the head and killed by West. Brock and West then took a pistol, pair of handcuffs, gold necklace, silverware, a radio and other items from around the house, loaded the items into Scudder's jeep, which was a black vehicle marked on each side with a large inverted five-point star, and fled the scene heading out of Georgia toward Alabama and Mississippi.
[2] This reference goes to the trial record and the habeas record, which will be discussed later.
[3] Prior to the trial of West II, attorneys for appellant, being familiar with the record in West I, filed a motion for the court to refrain from commenting on evidence and/or from examining and/or cross-examining witnesses. It was overruled with the statement that the attorneys could object to any procedure during the trial.