# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CT-02058-SCT

***WILLIAM ANTONIO AVERY a/k/a WILLIAM A.
AVERY a/k/a WILLIAM KEN AVERY a/k/a
WILLIAM A. "KEN" AVERY a/k/a KEN***

***v.***

***STATE OF MISSISSIPPI***

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/13/2010 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON, JR. |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | IMHOTEP ALKEBU-LAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/08/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     William Antonio "Ken" Avery was convicted of selling cocaine and felony fleeing. The Court of Appeals affirmed his conviction and sentence. This Court granted certiorari to address Avery's claim that the trial court committed reversible error in refusing to sequester the witnesses at the post-trial hearing. Finding no reversible error, we affirm Avery's conviction and sentence.

**FACTS & PROCEDURAL HISTORY**

¶2. On March 30, 2010, law enforcement officials arranged for a confidential informant to purchase drugs from Avery while wearing an audiovisual recording device. The informant purchased crack cocaine from Avery and turned it over to the police. The police attempted to arrest Avery immediately thereafter. Avery fled in his vehicle, and police pursued him, ultimately resulting in his arrest. Avery was tried in Lauderdale County, and a jury convicted him of selling cocaine and felony fleeing.

¶3. After his conviction and sentencing, Avery discovered that the trial judge may have communicated with Juror Kim Watts. While the exact nature of the communication is disputed, the following is a general recounting of the relevant events. On the night before jury deliberations, the trial judge had a conversation at a local restaurant with Jamie Cater, a caterer and the employer of Juror Watts. Cater told the judge that she needed Watts back at work. The judge replied that he thought the case would be over by noon the next day. The following morning, Juror Watts was the last juror to arrive at the courthouse. She mentioned to the judge that she needed to get back to work soon. The judge responded that the jury would likely begin deliberations that morning, and that they should be finished by noon. After the defense rested, the jury deliberated for approximately twenty minutes and then returned a guilty verdict.

¶4. Avery sought a post-trial hearing regarding the judge's alleged communication.[1] At the beginning of the hearing, Avery requested invocation of Rule 615 of the Mississippi

---

[1] The hearing also covered Avery's motion for judgment notwithstanding the verdict (JNOV), motion for new trial, and motion for reconsideration of sentencing.

Rules of Evidence, mandating that the witnesses be sequestered. The judge denied Avery's request and allowed the witnesses to testify in each other's presence. At the beginning of the hearing, the trial judge explained his version of the events to the attorneys and witnesses. He acknowledged that he had told Juror Watts that the jury probably would begin deliberations on the morning in question. Juror Watts testified that she had told the judge she needed to return to work, but she did not recall a response from the judge. Juror Elaine Moss testified that Juror Watts had told her that they should be finished with the case by noon. Juror Moss could not remember if any other jurors were present at the time. Avery's wife and mother testified that Watts had told the judge that she had gotten his message that "court will be over by 12:00 and to bring a pan of dressing." The judge denied Avery's post-trial motions.

¶5.     Avery appealed, raising several assignments of error, including the judge's failure to sequester the witnesses upon his request at the post-trial hearing. The Court of Appeals affirmed the trial court in all respects. *Avery v. State*, No. 2010-KA-02058-COA, 2012 WL 2304715 (Miss. Ct. App. June 19, 2012). Avery then filed a petition for certiorari with this Court, raising substantially the same issues addressed by the Court of Appeals. We may limit the issues we address upon a grant of certiorari. *Jones v. State*, 95 So. 3d 641, 645 (Miss. 2012) (citations omitted); Miss. R. App. P. 17(h). Thus, we limit our review to Avery's claim that the trial court committed reversible error by failing to sequester the jurors at the post-trial hearing.

## STANDARD OF REVIEW

¶6.     Avery argues that the trial court committed reversible error by refusing to sequester the witnesses upon his request at his post-trial hearing. When a violation of Rule 615 is

3

alleged on appeal, this Court is limited to an abuse-of-discretion standard of review. *Douglas v. State*, 525 So. 2d 1312, 1318 (Miss. 1988). However, "[t]he discretion of the trial court must be exercised within the boundaries of the Mississippi Rules of Evidence. *Johnston v. State*, 567 So. 2d 237, 238 (Miss. 1990).

## DISCUSSION

### I. Whether a new trial should be granted based on a violation of Rule 615 and alleged jury misconduct.

¶7.     Rule 615 provides, "At the request of a party the court *shall* order witnesses excluded so that they cannot hear the testimony of other witnesses[.]" Miss. R. Evid. 615 (emphasis added).  The purpose of Rule 615 is to "exercis[e] a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses and . . . ai[d] in detecting testimony that is less than candid." *Douglas*, 525 So. 2d at 1316 (quoting *Geders v. United States*, 425 U.S. 80, 87, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976)). Simply put, Rule 615 guards against "falsification, inaccuracy, and collusion."  Miss. R. Evid. 615 cmt.

¶8.     The Court of Appeals correctly held that the trial court erred in refusing to sequester the witnesses upon Avery's request at the post-trial hearing.  *Avery*, 2012 WL 2304715, at *5.  However, the Court of Appeals ultimately held that the trial court had not abused its discretion in refusing to invoke Rule 615 because Avery had failed to show that he was prejudiced by that refusal. *Id.*  (citing *Finley*, 725 So. 2d at 233 (finding that the "resultant degree of prejudice to the defendant must first demonstrate that the trial court abused its discretion.")).

4

¶9.    The Court of Appeals was incorrect in applying the abuse-of-discretion standard to the trial court's refusal to invoke Rule 615. As indicated by the mandatory language of Rule 615, the trial court has no discretion in the rule's application; the court must apply it when a party invokes it. *Finley v. State*, 725 So. 2d 226, 234 (Miss. 1998) (citing *Douglas*, 525 So. 2d at 1316). The abuse-of-discretion standard, requiring a showing of prejudice to the defendant, refers to the trial court's discretion in granting, or not granting, a remedy upon a violation of the rule.[2] *See Finley*, 725 So. 2d at 233 (citing *Douglas*, 525 So. 2d at 1317) ("Once a witness has violated the rule, the *remedy* lies within the court's discretion."). Here, the trial court's refusal to invoke Rule 615 upon Avery's request was a distinct error; thus, it was improper for the Court of Appeals to find that the error did not amount to an abuse of discretion.

¶10.   This Court's inquiry does not end there, though. The State argues that this error was harmless and had no effect on the jury's verdict or the outcome of the post-trial hearing. "'[A] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials." *Brown v. U.S.*, 411 U.S. 223, 231-232, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973) (citing

---

[2] Rule 615 does not provide an express remedy for its violation. However, this Court has provided trial courts with the discretion to apply any of several remedies. The offending witness may be excluded from testifying upon a showing of prejudice to the complaining party. *Douglas*, 525 So. 2d at 1317 (citing *U.S. v. Warren*, 478 F. 2d 1058, 1076 (5th Cir. 1978)). Absent a showing of prejudice, the more appropriate remedy is a "full-bore cross-examination" of the witness on the facts of the violation of the rule. *Id.* (citing *U.S. v. Jimenez*, 780 F. 2d 975, 981 (11th Cir. 1986)). The trial court also may instruct the jury that a violation of Rule 615 should be considered in evaluating the credibility of the witness. *Id.* (citing *Jimenez*, 780 F. 2d at 981). If the witness testifies before the trial court is aware of the violation, the trial court may also cite that witness for contempt. *Id.* at 1318 (citing *U.S. v. Blasco*, 702 F. 2d 1315, 1327 (11th Cir. 1983)).

***Bruton v. U.S.***, 391 U.S. 123, 134, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968) (quoting ***Lutwak v. U.S.***, 344 U.S. 604, 619, 73 S. Ct. 481, 97 L. Ed. 593 (1953))). For an error to be harmless, it must be "clear beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ***Conley v. State***, 790 So. 2d 773, 789 (Miss. 2001) (citing ***Stokes v. State***, 548 So. 2d 118, 124 (Miss. 1989)). In conducting harmless-error analysis, this Court has the power and duty to review the record *de novo* to determine the error's effect. ***Tran v. State***, 962 So. 2d 1237, 1247 (Miss. 2007) (citing ***Arizona v. Fulminante***, 499 U.S. 279, 295, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)).

¶11. This Court finds that the trial court's error in failing to sequester the witnesses was harmless beyond a reasonable doubt. We have held that a technical violation of Rule 615 is harmless where the violation did not adversely affect the defendant. ***Conley***, 790 So. 2d at 789 (citing ***Stokes***, 548 So. 2d at 124). Here, Avery's conviction was supported by overwhelming evidence at trial. Avery's drug sale was captured on audiovisual surveillance, and he presented no witnesses in his defense. While the Court of Appeals incorrectly applied the abuse-of-discretion standard to the trial court's initial failure to comply with Rule 615, we find that Avery's failure to present any evidence of prejudice serves as persuasive evidence that the trial court's error was harmless. Telling a juror's employer and a juror that "Court will be over by noon" was an innocuous statement with no arguable influence on Avery's case. The trial court's failure to sequester witnesses at Avery's *post-trial* hearing certainly could not have affected the jury's verdict, nor could it have had any arguable effect on Avery's post-trial hearing based on the weight of the evidence against him. Based on the

6

record, this Court cannot say that the trial court's error rendered Avery's trial or post-trial hearing fundamentally unfair. This issue is without merit.

## CONCLUSION

¶12. While the trial court erred in refusing to sequester the witnesses at Avery's post-trial hearing, the error was harmless. The Court of Appeals erred in its analysis, but correctly affirmed the trial court's conviction and sentence. Based on harmless-error analysis this Court affirms Avery's conviction and sentence.

¶13. **COUNT I: CONVICTION OF SALE OF COCAINE AND SENTENCE OF SIXTY (60) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF FELONY FLEEING AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES SHALL BE SERVED WITHOUT THE POSSIBILITY OF PROBATION, PAROLE, EARNED TIME OR GOOD TIME CREDIT NOR ANY OTHER TYPE OF EARLY RELEASE. SENTENCES IN COUNTS I AND II ARE TO RUN CONCURRENTLY TO EACH OTHER BUT CONSECUTIVELY TO TIME IN CAUSE # 645-02 AND # 691-06. APPELLANT SHALL ALSO PAY COURT COSTS OF $434.50 AND A $5,000 FINE AND $300.00 LAB FEE.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ.**

**KING, JUSTICE, DISSENTING:**

¶14. Because I believe that the post-trial hearing was irretrievably tainted due to the egregious violation of Rule 615, I would reverse and remand this matter for a new post-trial hearing. Therefore, I respectfully dissent.

¶15. After Avery's trial and conviction in this matter, he discovered that the trial judge may have communicated improperly with Kim Watts, a juror, and thus sought a hearing on the matter. At the beginning of the hearing, Avery invoked Rule 615 of the Mississippi Rules

7

of Evidence ("The Rule"), mandating that the witnesses be sequestered. The judge refused to sequester the witnesses. Then, in the presence of the anticipated witnesses, the judge announced that he would testify as to the facts surrounding his alleged communication with Kim Watts. Avery *again* asked that the witnesses be sequestered. The judge again denied the request and stated that "I'm going to testify as to what I understand happened, or I'll put on the record what I understood happened. And if they feel like there's anything different, then they – you know, you could ask them about it."[3] Avery's counsel *yet again* protested the failure to sequester the witnesses, noting that the judge's testifying, particularly because he was the judge, could influence the other witnesses' testimony. The judge responded: "I've got a pretty clear memory about what happened, and I'm quite certain that I – there's nothing I did placed any influence on any juror, and I just think this is much ado about nothing, and I frankly resent it. But I will testify to the truthfulness of it." The judge went on to testify as to his version of the events, with all other witnesses present.[4] After the judge testified, Avery, for the fourth time, requested that the court sequester the witnesses, and the court again denied the request. Five additional witnesses then testified regarding the events in question.[5]

---

[3]The judge did not offer to subject himself to examination by the attorneys.

[4]I note the troubling ethical issues surrounding a judge presiding over a proceeding at which he is a witness and in which he has personal knowledge of the disputed facts. Code of Judicial Conduct Canon 3E(1)(a) & (d)(iv); *see also* **Brashier v. State**, 20 So. 2d 65 (Miss. 1944). The failure of the judge to *sua sponte* recuse himself from presiding over the hearing on Avery's post-trial motions appears problematic. However, neither party raises this issue, thus, I decline to address it.

[5]During some of these witnesses' testimony, the judge interjected and offered his testimony as to certain facts known to him.

ANALYSIS

¶16.    The majority correctly finds that the trial judge erred, abusing his discretion by refusing to sequester the witnesses pursuant to Rule 615.  The majority also correctly notes the purpose of Rule 615 – to prevent witnesses from tailoring their testimony and to "guard[] against 'falsification, inaccuracy, and collusion.'" Maj. Op. ¶ 7.  However, the majority incorrectly finds that this error was harmless.

¶17.    The majority claims that the failure to enforce the Rule was harmless error.  Harmless error is only applicable when there exists no prejudice to the defendant, or, as the majority puts it, "where the violation did not adversely affect the defendant." *Jackson v. State*, 684 So. 2d 1213, 1225 (Miss. 1996); Maj. Op. ¶ 11.  An analysis of prejudice, or how the error "adversely affected" the defendant, is inappropriate under the specific facts of this case.  The majority relies on facts and testimony garnered at the irretrievably tainted hearing to determine that what occurred "was an innocuous statement with no arguable influence on Avery's case." Maj. Op. ¶ 11.  The fact is that, under such a gross violation of Rule 615 and where no remedy was employed to determine the effect that the Rule violation had on the testimony, we simply cannot determine what the witnesses would have testified to had Rule 615 been enforced.  As the majority admits, the purpose of the Rule is to prevent falsification, inaccuracy, and collusion.  It is difficult to imagine a more egregious violation of the Rule than the violation that occurred in this case, thus the risk of falsification, inaccuracy, and collusion is heightened.  The majority seems to divine that the witness testimony would have been the same had the hearing not been irretrievably tainted.  The majority may be correct; however, the majority may be incorrect – the untainted testimony

might have been very different from that given at the hearing. We simply do not, and cannot, know. By requiring Avery to prove he was adversely affected by requiring a showing of adverse effect using the tainted evidence, the majority is requiring an exercise in futility.[6] Under the specific facts of this case, the very fact of the error in the first instance renders the resulting evidence highly suspect. But the majority allows the trial court to commit such an egregious error without reprise because it opines that the tainted result produced by the violation of Rule 615 proves that the error was harmless. Such logic makes little sense.

¶18. This is a different situation than those in which a witness or an attorney violates the sequestration rule, or in which the judge sequesters the witnesses but makes some mistake in exempting a particular witness from the Rule. In this case, the judge outright refused to sequester any of the witnesses upon Avery's request, thus clearly violating the most basic mandate of Rule 615 and tainting the entire post-trial proceeding, rendering it fundamentally unfair. In addition, the trial judge, while sitting as the trier of fact and prior to hearing the

---

[6]Furthermore, under the facts of this case, proving prejudice or "adverse effect" is a particularly onerous, if not impossible, burden to place on the defendant where the same judge both made the decision not to invoke the rule and gave the offending testimony, after which five other witnesses testified regarding the same events. "The functions of a judge and a witness are incompatible." *Brashier v. State*, 20 So. 2d 65, 66 (Miss. 1944). It is problematic for a judge to "pass upon the credibility and weight of his own evidence." *Id.* Additionally, "the words and actions of trial judges have great weight." *Id.* Indeed, the judge's testimony was accompanied by "the weight and dignity of the court." *Thompson v. State*, 468 So. 2d 852, 854 (Miss. 1985). Thus, common sense dictates that witnesses may be reluctant to contradict the testimony of the judge, especially when that same judge is the person determining the credibility of their testimony. *See Thompson*, 468 So. 2d at 854 ("It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge.") (quoting *Green v. State*, 53 So. 415 (Miss. 1910)). Additionally, placing the burden on the defendant to prove the witness testimony would have been different absent the taint caused by the utter refusal to apply the Rule is likewise an impossible burden.

testimony of a single witness, declared that he had predetermined the facts and would place the true facts into the record. Thus, I would reverse the trial court's decision to deny Avery's post-trial motion on the issue of the judge's improper influence on the jury, reverse the Court of Appeals decision to the extent it affirmed the trial court on this issue, and remand the case to the trial court for a new hearing on Avery's post-trial motion, with the new post-trial hearing confined to the issue of improper influence on the jury. At the new post-trial hearing, I would require that, upon either party's request under Rule 615, the trial court sequester the witnesses.

**KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION**.