KING, Justice,
dissenting:
¶ 14. Because I believe that the post-trial hearing was irretrievably tainted due to the egregious violation of Rule 615, I would reverse and remand this matter for a new post-trial hearing. Therefore, I respectfully dissent.
¶ 15. After Avery’s trial and conviction in this matter, he discovered that the trial judge may have communicated improperly with Kim Watts, a juror, and thus sought a hearing on the matter. At the beginning of the hearing, Avery invoked Rule 615 of the Mississippi Rules of Evidence (“The Rule”), mandating that the witnesses be sequestered. The judge refused to sequester the witnesses. Then, in the presence of the anticipated witnesses, the judge announced that he would testify as to the facts surrounding his alleged communication with Kim Watts. Avery again asked that the witnesses be sequestered. The judge again denied the request and stated that “I’m going to testify as to what I understand happened, or I’ll put on the record what I understood happened. And if they feel like there’s anything different, then they — you know, you could ask them *322 about it.”[3] Avery’s counsel yet again protested the failure to sequester the witnesses, noting that the judge’s testifying, particularly because he was the judge, could influence the other witnesses’ testimony. The judge responded: “I’ve got a pretty clear memory about what happened, and I’m quite certain that I — there’s nothing I did placed any influence on any juror, and I just think this is much ado about nothing, and I frankly resent it. But I will testify to the truthfulness of it.” The judge went on to testify as to his version of the events, with all other witnesses present.[4] After the judge testified, Avery, for the fourth time, requested that the court sequester the witnesses, and the court again denied the request. Five additional witnesses then testified regarding the events in question.[5]

ANALYSIS

¶ 16. The majority correctly finds that the trial judge erred, abusing his discretion by refusing to sequester the witnesses pursuant to Rule 615. The majority also correctly notes the purpose of Rule 615— to prevent witnesses from tailoring their testimony and to “guard[ ] against ‘falsification, inaccuracy, and collusion.’” Maj. Op. 7. However, the majority incorrectly finds that this error was harmless.
¶ 17. The majority claims that the failure to enforce the Rule was harmless error. Harmless error is only applicable when there exists no prejudice to the defendant, or, as the majority puts it, “where the violation did not adversely affect the defendant.” Jackson v. State, 684 So.2d 1213, 1225 (Miss.1996); Maj. Op. ¶ 11. An analysis of prejudice, or how the error “adversely affected” the defendant, is inappropriate under the specific facts of this case. The majority relies on facts and testimony garnered at the irretrievably tainted hearing to determine that what occurred “was an innocuous statement with no arguable influence on Avery’s case.” Maj. Op. ¶ 11. The fact is that, under such a gross violation of Rule 615 and where no remedy was employed to determine the effect that the Rule violation had on the testimony, we simply cannot determine what the witnesses would have testified to had Rule 615 been enforced. As the majority admits, the purpose of the Rule is to prevent falsification, inaccuracy, and collusion. It is difficult to imagine a more egregious violation of the Rule than the violation that occurred in this case, thus the risk of falsification, inaccuracy, and collusion is heightened. The majority seems to divine that the witness testimony would have been the same had the hearing not been irretrievably tainted. The majority may be correct; however, the majority may be incorrect— the untainted testimony might have been very different from that given at the hearing. We simply do not, and cannot, know. By requiring Avery to prove he was adversely affected by requiring a showing of adverse effect using the tainted evidence, the majority is requiring an exercise in *323 futility.[6] Under the specific facts of this case, the very fact of the error in the first instance renders the resulting evidence highly suspect. But the majority allows the trial court to commit such an egregious error without reprise because it opines that the tainted result produced by the violation of Rule 615 proves that the error was harmless. Such logic makes little sense.
¶ 18. This is a different situation than those in which a witness or an attorney violates the sequestration rule, or in which the judge sequesters the witnesses but makes some mistake in exempting a particular witness from the Rule. In this case, the judge outright refused to sequester any of the witnesses upon Avery’s request, thus clearly violating the most basic mandate of Rule 615 and tainting the entire post-trial proceeding, rendering it fundamentally unfair. In addition, the trial judge, while sitting as the trier of fact and prior to hearing the testimony of a single witness, declared that he had predetermined the facts and would place the true facts into the record. Thus, I would reverse the trial court’s decision to deny Avery’s post-trial motion on the issue of the judge’s improper influence on the jury, reverse the Court of Appeals decision to the extent it affirmed the trial court on this issue, and remand the case to the trial court for a new hearing on Avery’s post-trial motion, with the new post-trial hearing confined to the issue of improper influence on the jury. At the new post-trial hearing, I would require that, upon either party’s request under Rule 615, the trial court sequester the witnesses.
KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.

. The judge did not offer to subject himself to examination by the attorneys.

. I note the troubling ethical issues surrounding a judge presiding over a proceeding at which he is a witness and in which he has personal knowledge of the disputed facts. Code of Judicial Conduct Canon 3E(l)(a) & (d)(iv); see also Brashier v. State, 197 Miss. 237, 20 So.2d 65 (1944). The failure of the judge to sua sponte recuse himself from presiding over the hearing on Avery's post-trial motions appears problematic. However, neither party raises this issue, thus, I decline to address it.

.During some of these witnesses' testimony, the judge interjected and offered his testimony as to certain facts known to him.

. Furthermore, under the facts of this case, proving prejudice or "adverse effect” is a particularly onerous, if not impossible, burden to place on the defendant where the same judge both made the decision not to invoke the rule and gave the offending testimony, after which five other witnesses testified regarding the same events. "The functions of a judge and a witness are incompatible.” Brashier v. State, 197 Miss. 237, 20 So.2d 65, 66 (1944). It is problematic for a judge to "pass upon the credibility and weight of his own evidence.” Id. Additionally, "the words and actions of trial judges have great weight.” Id. Indeed, the judge’s testimony was accompanied by "the weight and dignity of the court.” Thompson v. State, 468 So.2d 852, 854 (Miss.1985). Thus, common sense dictates that witnesses may be reluctant to contradict the testimony of the judge, especially when that same judge is the person determining the credibility of their testimony. See Thompson, 468 So.2d at 854 ("It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge.”) (quoting Green v. State, 97 Miss. 834, 53 So. 415 (1910)). Additionally, placing the burden on the defendant to prove the witness testimony would have been different absent the taint caused by the utter refusal to apply the Rule is likewise an impossible burden.