# INTERNATIONAL RESOURCE VENTURES, INC. *v.* DIAMOND MINING COMPANY of America, Inc.

96-674                                             934 S.W.2d 218

Supreme Court of Arkansas
Opinion delivered December 9, 1996

*Turner & Associates; John J. Watkins*; and *Allen Law Firm*, by: *H. William Allen*, for appellant.

*Wright, Lindsey & Jennings*, by: *N.M. Norton, Roger D. Rowe*, and *Stephen R. Lancaster*, for appellee.

ROBERT H. DUDLEY, Justice. This interlocutory appeal is lodged because of the disqualification of one of International Re-

source Ventures, Inc's attorneys. It is before this court under Ark. Sup. Ct. R. 1-2(a)12 and Ark. R. App. P.—Civ. 2(a)8. We affirm the trial court's ruling disqualifying the attorney.

International Resource Ventures, Inc., appellant, a Texas corporation, owns eight percent of the common stock of Exdiam Corporation, another Texas corporation. On August 31, 1995, International Resource filed a shareholder's derivative suit in Clark County, on behalf of Exdiam, against Diamond Mining Company of America, Inc., appellee, also a Texas corporation, and several other people and corporations, including Diamond Fields Resources, Inc., a Canadian corporation. International Resource alleged that Diamond Mining conspired with a co-defendant to breach fiduciary duties. International Resource asked for compensatory and punitive damages or, alternatively, that 1,000,000 shares paid by co-defendant Diamond Fields for corporate opportunities of Exdiam be deemed to be held in constructive trust for the benefit of Exdiam and reissued to Exdiam. Diamond Mining filed a motion to dismiss pursuant to Ark. R. Civ. P. 12(b)(2), (3), (5), and (6) on the grounds that International Resource failed to state facts upon which relief could be granted, failed to allege sufficient facts to place venue in Clark County, and failed to allege sufficient contacts among the subject transactions, Diamond Mining, and the State of Arkansas that would render Diamond Mining subject to personal jurisdiction. Three of Diamond Mining's co-defendants filed similar motions to dismiss.

International Resource moved for a nonsuit, and on February 2, 1996, the trial court dismissed the action without prejudice. More than ninety days later, on May 31, 1996, Diamond Mining filed a motion to modify the order of dismissal to one with prejudice. Under Ark. R. Civ. P. 60(c)(4), an order may be set aside after ninety days for fraud practiced by the successful party in obtaining the order. The motion to modify the order to a dismissal with prejudice alleged that on November 18, 1995, International Resource had nonsuited an identical suit in Texas, and, under Ark. R. Civ. P. 41(a), the Clark County nonsuit was International Resource's second nonsuit; therefore, it should have been with prejudice. Diamond Mining's motion also alleged that International Resource had committed fraud in obtaining the dismissal without prejudice.

A summary of Diamond Mining's allegation of fraud is that on August 29, 1995, or two days before the suit was filed in Clark County, International Resource had filed a virtually identical action in the district court of Dallas County, Texas, but had instructed the clerk of that court not to have summons issued. Diamond Mining alleged that it was unaware of the Texas suit since service was never had. The suit in Texas was assigned to the 101st District Court, and, a few months earlier, in another Exdiam shareholder action, the same district court had granted summary judgment against the plaintiff. Diamond Mining contended that, as a result, International Resource did not wish to pursue its case in the Texas jurisdiction, but rather chose to pursue its virtually identical suit that was pending in Clark County. Diamond Mining alleged that the purpose of the suits is to force Diamond Fields Resources to pay an *"in terrorem"* settlement or else lose a $4.3 billion sale of its stock to Inco. Diamond Mining alleged that Diamond Fields shareholders are being deprived of $868,492.00 in interest each day by the "machinations" of International Resource and that its officers want to keep the suits pending as long as possible in an attempt to force a settlement. Diamond Mining alleged that, after the dismissal without prejudice in Clark County, International Resource filed a virtually identical third suit in Texas, but that, if the Clark County order is modified to dismissal "with prejudice," the third suit in Texas likely will be procedurally barred. Diamond Mining alleged that, after International Resource filed its third suit, a computer check of the Texas court's docket revealed to it for the first time the existence of the first Texas Suit. Diamond Mining finally alleged that it had contacted International Resource in an attempt to convince it to apprise the Clark County trial court of the true facts, but that it refused to do so.

International Resource responded to the motion to modify the order of dismissal, and, to the response, attached a twenty-ninepage evidentiary affidavit by Eric Fryar of its Texas law firm of Susman Godfrey, L.L.P. Diamond Mining then moved to disqualify Eric Fryar from acting as attorney for International Resource. At a hearing on the motion to disqualify, International Resource, by another attorney, stated that it would submit Fryar's testimony through the affidavit and also by live testimony. The trial judge ruled that Fryar could serve either as a witness, or as an attorney, but not as both. International Resource chose for Fryar to give testimony, and the trial judge ruled that he was disqualified from

further participation as an attorney. This interlocutory appeal is taken from the ruling disqualifying Fryar from serving as an attorney in the case.

■ Rule 3.7 of the Model Rules of Professional conduct provides:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

The comment to Rule 3.7 states in part:

> Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client.
>
> The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate–witness should be taken as proof or as an analysis of the proof.

Model Rules of Professional Conduct Rule 3.7 cmt. (1996). We have held that Rule 3.7 is applicable to a lawyer's giving evidence by affidavit as well as by testimony in open court. *See McIntosh* v. *Southwestern Truck Sales*, 304 Ark. 224, 800 S.W.2d 431 (1990).

■ In *Arthur* v. *Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995), we held that the trial court abused its discretion in allowing an attorney to testify and act as advocate at a hearing on certification of a class action. In the opinion, we stated:

> The general rule is clear and unmistakable. A *lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness*. The reasoning underlying the general rule is to prevent prejudice and a conflict of interest. The professional judgment of a lawyer should be exercised, within the

bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Conversely, a witness is to tell the truth without loyalty to either party and without regard to which side his testimony might favor. Combining the dissimilar roles of attorney and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and his client. The court of appeals has written that:

> There are several reasons for the general rule. First, because of interest or the appearance of interest in the outcome of the trial, the advocate who testifies at trial may be subject to impeachment and the evidentiary effect of his testimony will be weakened, thus harming his client. Second, opposing counsel may be handicapped in cross-examining and arguing the credibility of trial counsel who also acts as a witness. Third, an advocate who becomes a witness may be in the unseemly position of arguing his own credibility. Fourth, the roles of advocate and witness are inconsistent and should not be assumed by one individual. Last, the attorney should not act as both trial counsel and a material witness because of the appearance of impropriety,

*Id.* at 279-80, 895 S.W.2d at 931 (emphasis in the original) (quoting in part *Ford* v. *State*, 4 Ark. App. 135, 139, 628 S.W.2d 340, 342 (1982)). We stated that the rule prohibits an attorney from acting as a witness in procedural matters:

> In the case before us, the trial court allowed Mr. Hicks's testimony on the basis that he had "testified in a hearing on dealing with a procedural consideration by the court." Accordingly, the appellees ask us to agree that because the class certification was "procedural," Mr. Hicks did not act as an "advocate at trial," and, as such, the general rule prohibiting an attorney from testifying is not applicable. In rejecting the appellees' argument, we recognize that there is no exception that allows an attorney to testify about the propriety of a class certification in a contested case, and note that the creation of such an exception would not be a legitimate construction of the rule. An attorney in our system of jurisprudence is to serve as an advocate and is to have complete loyalty, within

the bounds of the law, to his client. The attorney so acted at the certification hearing.

*Id.* at 281, 895 S.W.2d at 932. Our opinion noted that the attorney acted as advocate at the bitterly contested hearing on class certification, and that, in addition to his clients' interest, the attorney "had something very close to a personal interest." 320 Ark. at 282, 895 S.W.2d at 933.

■ Applying the holding of *Arthur* to the present case, the trial court correctly disqualified Fryar from acting as an attorney after he chose to submit the evidentiary affidavit and to testify. See *Calton Properties* v. *Ken's Discount Building Materials*, 282 Ark. 521, 523, 669 S.W.2d 469, 471 (1984), in which we held that the attorney's affidavit was "nothing less than an attempt by the attorney to disguise testimony while the attorney is still serving as an advocate." In *Calton Properties* we further stated:

> We have repeatedly held that an attorney must decide whether he should serve as a witness or as an advocate. An attorney who desires to testify must withdraw from the litigation. An attorney who desires to serve as an advocate may not testify. The filing of the affidavit is a flagrant violation of our clear directive.

*Id.* at 523-24, 669 S.W.2d at 471 (citations omitted).

International Resource contends that Rule 3.7 states only that a lawyer cannot act as advocate *at a trial* in which he is likely to be a necessary witness and cites the case of *Caplan* v. *Braverman*, 876 F. Supp. 710 (E.D. Pa. 1995), to support its argument that the prohibition should apply only to the trial on the merits. The Pennsylvania District Court's opinion supports International Resource's argument, but we choose to follow our interpretation of the rule. International Resource also asserts that *RLI Insurance Co.* v. *Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991), supports the proposition that attorneys can testify at hearings that are not trials and still continue to represent the client. In that case the attorneys testified at a Rule 60 hearing, but our opinion does not mention Rule 3.7 or the propriety of the attorneys' giving testimony. The case does not have a holding that affects the case at bar.

International Resource relies on additional cases from other jurisdictions. These cases are distinguishable from the present case. And, as previously explained, we have interpreted Rule 3.7 and choose to follow our interpretation.

■ International Resource quotes from Preliminary Draft No. 12 (May 12, 1996), American Law Institute, *Restatement of the Law, The Law Governing Lawyers* to support its argument that a lawyer can testify in a procedural matter and still represent his client at trial. We choose to follow the Model Rule that we have adopted, as well as our interpretations of the rule.

■ International Resource next contends that, even if Rule 3.7 applies to this case, we should reverse the disqualification because it would work a substantial hardship on International Resource. It asserts that Fryar's testimony is vital to its response to the motion and that Fryar has been the lead counsel on this case. Its president submitted an affidavit setting out Fryar's prior work and the fact that he did virtually all of the factual investigation and legal analysis in the case. Model Rule of Professional Conduct Rule 3.7(3) provides an exception to the general rule that a lawyer cannot act as an advocate and a witness when disqualifying the lawyer would work a substantial hardship on his client. The hardship exception does not apply to the facts of this case.

The comment to Rule 3.7 provides in pertinent part:

> Apart from these two exceptions, paragraph (3) [the hardship exception] recognizes that a balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.

Model Rules of Professional Conduct Rule 3.7 cmt. (1996).

■ Here, Fryar's testimony is the primary evidence of Inter-

national Resource's opposition to the motion to modify the order, and his testimony is, without question, disputed. When the nature of the case as it now stands before the trial court is considered, it appears that Diamond Mining would be prejudiced if Fryar were not disqualified and that International Resource will not be substantially disadvantaged by the disqualification. International Resource has a "famed Texas plaintiffs' lawyer," according to a press release cited by Diamond Mining, and three capable Arkansas attorneys: It will not have the hardship of having to hire new counsel and familiarize them with the case. *See West v. State*, 519 So. 2d 418 (Miss. 1988). Additionally, the matter currently before the trial court concerns Arkansas procedural rules on nonsuit and modification of orders, and the Arkansas attorneys are presumably able to interpret Arkansas rules of civil procedure as well, or better, than Texas counsel.

International Resource next argues that the uncontested-facts exception to Rule 3.7 applies. It argues that there are no contested facts involved in the motion to modify, only a difference in the interpretation of those facts. It bases this argument on the contention that Diamond Mining's counsel stated to the trial court that there was no agreement concerning the order of dismissal without prejudice and that Diamond Mining stated to this court that it did not object to the order of dismissal. The argument is not persuasive. There is a great difference between agreeing or stipulating to an order of dismissal and not objecting because there is no basis for objection. The statement referred to is as follows:

> To our surprise, Appellant non-suited on February 2nd. In settlement negotiations, we had proposed a different method of handling dismissal, one which would have conceded our pending motions. However, we had no way, and at that time knew no reason, to object to this move.

> An order of dismissal "without prejudice" was entered.

This statement by Diamond Mining does not concede that the parties agreed to an order of dismissal without prejudice. Rather, it shows that Diamond Mining had no reason to object to the nonsuiting by International Resource. Furthermore, based on the pleadings, there appear to be many contested facts regarding the motion to conform and Fryar will be a key witness on these matters. Thus, Fryar's testimony does not relate only to an uncon-

tested issue, and this exception to the rule is not applicable.

■  After this case was submitted to this court for decision, the parties informed the court that the case had been settled. Because it had already been submitted and decided, we hand down this opinion.

Affirmed.