**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 1998-KA-01079-SCT**

*STEVE JASPER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/27/1998 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANTHONY J. BUCKLEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | JEANNENE T. PACIFIC |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 12/09/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/30/99 |

## BEFORE PITTMAN, P.J., WALLER AND COBB, JJ.

## COBB, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. In February 1997, the Appellant, Steve Jasper, was indicted for the crime of grand larceny in Jones County, Mississippi. The indictment alleged that on or about June 11, 1997, Jasper stole a 1988 Ford truck containing furniture and other valuables from Crocker's, Inc., a furniture store located in Laurel, Mississippi.

¶2. On May 26 and 27, 1998, a trial on the merits was held in the Jones County Circuit Court. At the conclusion of the trial, the jury returned a verdict of guilty of grand larceny, and Jasper was sentenced as an habitual offender to serve five (5) years in the custody of the Mississippi Department of Corrections.

¶3. Taking exception with the jury's guilty verdict and the subsequent sentence, Jasper moved the trial court for a JNOV or a new trial, but that motion was denied. Jasper now appeals to this Court raising the following issues:

**I. THE COURT ERRED IN ALLOWING THE STATE TO STRIKE A BLACK JUROR OVER DEFENSE COUNSEL'S *BATSON* OBJECTION.**

**II. THE COURT ERRED IN SUGGESTING TO THE STATE HOW TO CURE A VERY SERIOUS ISSUE THAT HAD ARISEN AT TRIAL, AND HAD BEEN OBJECTED TO**

**BY DEFENSE COUNSEL, THEREBY EXHIBITING JUDICIAL BIAS.**

**III. THE COURT ERRED IN ALLOWING THE STATE TO ASK THE DEFENDANT, OVER OBJECTION, ABOUT PRIOR FELONY CONVICTION WITHOUT GIVING A LIMITING INSTRUCTION.**

**IV. THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND INSUFFICIENT AS A MATTER OF LAW.**

## STATEMENT OF FACTS

¶4. On the morning of June 11, 1997, a 1988 Ford truck was stolen from Crocker's, Inc., a furniture store in Laurel, Mississippi. At the time, the truck was loaded with two complete dining room suites, one valued at $775 and the other at $1,691. The Laurel Police Department was notified of the theft.

¶5. Later that afternoon, the truck was located sitting on the off-ramp of the I-59 southbound Moselle exit. Officer Tyrone Stewart of the Laurel Police Department contacted Charles Crocker, one of the owners of Crocker's, Inc., and arranged for Crocker to meet him in order to identify the truck. Crocker went to the truck's location and identified it as the vehicle which was stolen from the store that morning. Stewart confirmed the truck's ownership by running the truck's tag number and identifying the Crocker's logo on the side of the truck. The dining room suites were no longer in the truck.

¶6. At the scene, Stewart photographed the truck and dusted it for fingerprints. Stewart recovered several latent fingerprints from the inside surface of the driver's door on the panel next to the window. Only one latent fingerprint of value was found, and it was identified as the left middle fingerprint of Steve Jasper.

¶7. At trial, Billy Cooper, a friend of Jasper's for 10 or more years, testified that Jasper borrowed his truck sometime in the middle of June, 1997. Jasper left in the truck and returned approximately five (5) hours later with a table and four chairs. Jasper left the table and chairs at Cooper's house without further explanation. Cooper also testified that he and Jasper retrieved a table and six (6) chairs from a wooded area just outside of Ellisville, Mississippi, and took this second set of furniture to the house of Cooper's sister.

¶8. Jasper, testifying in his own defense, denied stealing the truck and furniture and denied ever being around the Crocker's delivery truck. Jasper did not recall his whereabouts on June 11, 1997.

¶9. The jury found Steve Jasper guilty of grand larceny. The judge denied Jasper's request for a pre-sentence report and sentenced Jasper to five (5) years to be served as an habitual offender. Jasper now appeals to this Court.

## ANALYSIS

### I. THE COURT ERRED IN ALLOWING THE STATE TO STRIKE A BLACK JUROR, OVER DEFENSE COUNSEL'S *BATSON* OBJECTION.

¶10. Jasper first asserts that the trial court erred in allowing the State to peremptorily challenge a black juror, Judia McDonald, thereby removing her from the jury panel. Jasper claims that McDonald's removal was effected for a racially invidious purpose. The State responds that McDonald was challenged for a

racially neutral reason - she was a close friend of Jasper's mother.

¶11. ***Batson v. Kentucky***, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), proscribes the racially discriminatory use of peremptory challenges. In order to establish a prima facie case of racial discrimination in the context of peremptory challenges, a defendant must demonstrate that:

> He is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of mind to discriminate.'

***Booker v. State***, 716 So. 2d 1064, 1068 (Miss. 1998).

¶12. In ***Booker*** we held that a "circuit court's findings as to whether the State exercised race-neutral peremptory challenges will be given great deference and will not be reversed unless they appear to be clearly erroneous." ***Id***. *See also* ***Coleman v. State***, 697 So. 2d 777, 785 (Miss. 1997); ***Johnson v. State***, 529 So. 2d 577, 583 (Miss. 1988); ***Lockett v. State***, 517 So. 2d 1346, 1349 (Miss. 1987).

¶13. During voir dire, Judia McDonald informed the State that she had known Jasper's mother, Bobbie Ferguson, for some 25 years. However, McDonald stated that she did not know Jasper and that her acquaintance with Bobbie Ferguson would not influence her decision. Later, the State exercised one of its peremptory challenges against McDonald, voicing concerns about her relationship with Jasper's mother. The trial judge granted the strike over the defense's objections, but made no findings of fact as to whether the State's reasons for making the peremptory challenge against McDonald were race-neutral.

¶14. This Court held in ***Fleming v. State***, 732 So.2d 172 (Miss. 1999), that trial courts should make an on-the-record factual determination of the merits of the reasons supporting the State's use of peremptory challenges. We found that such an on-the-record determination would remove "the guesswork surrounding the trial court's ruling" on a ***Batson*** issue. ***Fleming*** at 179.

¶15. According to our holding in ***Fleming*** the trial judge in the instant case was in error when he failed to make a finding on the record that the State's reasons for challenging McDonald were race-neutral. However, we hold this to be harmless error in this case as we find nothing in the record that indicates a ***Batson*** violation. The State challenged McDonald, not because she was black, but because she had known and attended church with the defendant's mother for 25 years. Despite McDonald's voluntary admission of the relationship and her claim that she did not know Steve Jasper, the State's concern about her impartiality was an acceptable race-neutral reason. Thus, this issue is without merit.

### II. THE COURT ERRED IN SUGGESTING TO THE STATE HOW TO CURE A VERY SERIOUS ISSUE THAT HAD ARISEN AT TRIAL, AND HAD BEEN OBJECTED TO BY DEFENSE COUNSEL, THEREBY EXHIBITING JUDICIAL BIAS.

¶16. Jasper next contends that the trial judge improperly interjected himself into the proceedings by suggesting to the State a means to cure a possible hearsay violation. Jasper complains that the trial judge gave unsolicited advice to the State, thus changing his role from a fair and impartial judge to an advocate on behalf of the State. The State argues that the judge's actions were outside the presence of the jury and thus did not prejudice the jury in favor of the State.

¶17. In *West v. State*, 519 So. 2d 418 (Miss. 1988), this Court reversed and remanded a defendant's murder conviction, in part because the trial judge was actively involved in the case on behalf of the prosecution, in the presence of the jury. During the cross examination of the defendant in *West*, the trial judge continually interrupted the attorneys for both sides and directly addressed questions to West. For example, while the prosecution was questioning West about a conversation West had with a law enforcement officer, the trial judge interjected, "What was the extent of the conversation you had? Were you in front of him, beside him, or behind him?" *West*, 519 So. 2d at 419-20. We found thirty (30) instances in *West* where the trial judge improperly or unnecessarily interjected himself into the proceedings. In *Nichols v. Munn*, 565 So. 2d 1132 (Miss. 1990), we found that the trial judge committed plain error by interjecting himself into the lawsuit in the presence of the jury. While the plaintiff, Nichols, was being cross-examined by the defense counsel regarding previous accidents for which he was hospitalized, the following exchange took place:

> Q. Okay. Let me see if I can refresh your memory. You don't remember anything about it now?
>
> A. What did I hit, or what hit me?
>
> Q. Okay. You don't remember?
>
> A. No.
>
> Q. That was in '76, about twelve years ago. Okay. Do you recall - -
>
> BY THE COURT: (Interposing)
>
> Just a minute. I want him to take some time and answer that. I find it, quite frankly, incredible that you wouldn't remember that you had an accident. Let him have some time. I want him to answer that, one way or the other.

*Nichols*, 565 So. 2d at 1133-34. Additionally, the trial judge extensively questioned an expert witness doctor regarding the plaintiff's injuries. We held specifically in *Nichols* that the circuit judge was clearly wrong for injecting himself into the lawsuit and openly displaying his incredulity of the plaintiff's case before the jury. *Nichols* at 1137.

¶18. In the present case the trial judge's interjection occurred outside the presence of the jury. Officer Tyrone Stewart had previously testified on direct examination that he recovered the stolen furniture from Billy Cooper. On redirect, the State asked Stewart if he had determined where Cooper had gotten the furniture and Stewart replied, "Steve Jasper." Jasper's counsel immediately objected and moved for a mistrial on the grounds of hearsay asserting that only Billy Cooper could rightfully answer that question. The State proposed that the matter could be remedied by striking the testimony and instructing the jury to disregard it. The judge ordered the jury out of the room.

¶19. After the jury left the room, discussion ensued regarding the impropriety of the State's question and the possible remedies, if any, to cure the hearsay. Jasper's counsel moved the court for a directed verdict claiming that absent the testimony of Billy Cooper, the State was unable to prove their case without the benefit of Stewart's hearsay testimony. The trial judge then inquired of the State if they had issued a subpoena for Cooper to testify. The State described the numerous efforts made, including issuing two (2) subpoenas, going to Cooper's family at least three times, putting out an APB for him, trying to contact his

girlfriend, and placing an agent at Cooper's work to wait for him to arrive. During this discourse, the trial judge stated:

> Do ya'll have a tag number? Put an all points bulletin out for him. Get a court order that he's evading process or do anything. Otherwise, you're gonna lose this case. And I'm not gonna take the blame for it.... Well, let's just get an instanter out on him. And that way when you get him, you bring him to me. If I get him, I'll know what to do with him.

At that point, the defense attorney stated: "[y]our Honor, if they don't find him by 3:30, they ain't gonna find him." As it was then 3:00 p.m., the trial judge called the jury back into the courtroom and announced that because of a problem with one of the witnesses in the case he would let them go, and asked them to return at 9:00 a.m. the next day.

¶20. This Court finds that although he came very close, the trial judge did not commit reversible error in this instance. Unlike the trial judges in *West* and *Nichols*, this trial judge was careful to act out of the presence of the jury. He realized that a potentially reversible error had been committed and excused the jury in order to discuss the matter. Therefore, the acts of the judge did not cause the jurors to question his impartiality toward the parties. Additionally, the judge did not directly interject himself into the case by asking questions to witnesses or ridiculing their credibility, nor did he unfairly provide the State with any previously unconsidered strategy or coaching. The State was aware of the importance of Cooper's testimony and had been diligently searching for him in order to get him to court to testify. The trial judge was trying to inform the State that it would need the testimony of Cooper in order to corroborate the hearsay testimony offered by Stewart. Although this Court does not find the trial judge's actions to constitute reversible error, we would remind all judges that an abundance of caution should be used to avoid even the appearance of partiality toward either party, whether in the presence of jurors or not. "It is the supreme duty of a trial judge, in so far as it is humanly possible, to hold the scales of justice evenly balanced between the litigants." *West v. State*, 519 So. 2d 418, 422 (Miss. 1988).

### III. THE COURT ERRED IN ALLOWING THE STATE TO ASK THE DEFENDANT ABOUT A PRIOR FELONY CONVICTION WITHOUT GIVING A LIMITING INSTRUCTION.

¶21. Jasper next argues that the trial court committed reversible error when it allowed the State to ask Jasper if he had ever been convicted of a felony. Jasper claims that this was highly prejudicial. Jasper further contends that the trial court should have given a limiting instruction *sua sponte* to the jury. The State responds that this general question was asked to demonstrate knowledge and motive and that the trial judge's failure to give an instruction was harmless error.

¶22. M.R.E. 404(b) governs the admissibility of previous acts at trial and states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶23. This rule exists to prevent the State from suggesting that, since a defendant has committed other crimes previously, the probability is greater that he is also guilty of the offense for which he is presently charged.

*See **Lancaster v. State***, 472 So. 2d 363, 367-368 (Miss. 1985).

¶24. In **Smith v. State**, 656 So. 2d 95, 99 (Miss. 1995) (citing **Jenkins v. State**, 507 So. 2d 89, 93 (Miss. 1987)), we held that, "[e]ven when other-crimes evidence is admissible under M.R.E. 404(b), it must pass through the 'ultimate filter' of M.R.E. 403." We went on to find in **Smith** that when other-crimes evidence is admitted under M.R.E. 404(b) a limiting instruction is required:

> [T]he jury must be informed as to the limited purpose for which they are allowed to consider the other-crimes evidence. This cannot be accomplished if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.". . .

**Smith**, 656 So. 2d at 99. We further stated that:

> . . . wherever 404(b) evidence is offered and there was an objection which is overruled, the objection shall be deemed an invocation of the right to M.R.E. 403 balancing analysis and a limiting instruction. The court shall conduct an M.R.E. analysis and, if the evidence passes that hurdle, give a limiting instruction unless the party objecting to the evidence objects to giving the limiting instruction.

**Smith** at 100.

¶25. Jasper was briefly examined, out of the presence of the jury, before he began his testimony on direct examination. At the end of the brief examination, still outside the presence of the jury, the State announced that it would ask Jasper if he had ever been convicted of a felony. The discourse was as follows:

> ASS'T. DA: Your Honor, we - - the State intends to ask him if he's ever been convicted of a crime before.

> DEFENSE ATT'Y: Your Honor, to which I object because they cannot just - -I understand they're asking basically for a hearing on this. But they cannot just as that question unless they have a purpose to it....That specifically cannot be done, and think it would be error for them to ask him that, Your Honor.

> ASS'T. DA: Not specific questions. Just ask him if he's ever been - -

> THE COURT: Why are you going to ask him?

> ASS'T. DA: Sir?

> THE COURT: Why would you ask him?

> ASS'T. DA: Knowledge and motive

> ****(BRIEF PAUSE)

> THE COURT: What's your specific question you intend to ask him?

> ASS'T. DA: Mr. Jasper, have you ever been convicted of a felony?

> THE COURT: All right

DEFENSE ATT'Y: Could I just note my objection to that based on my previous assertion, Your Honor?

THE COURT: All right. Bring the jury out.

¶26. The defense then called Steve Jasper to the stand and questioned him on direct examination. No mention was made of any prior conviction. On cross examination, the State's final question to Jasper was whether Jasper had ever been convicted of a felony. Jasper responded, "Yes." The defense announced he would have no redirect, the witness was excused, and the defense rested. At that point, the jury was given a break, and the defense renewed its motion for a directed verdict and its objection to the State being allowed to inquire about Jasper's prior conviction with a single question which could not possibly show motive or knowledge.[1]

¶27. The State asserts that the general nature of the question lessens its potential for prejudice. We disagree. By avoiding the specifics of Jasper's prior indiscretion, the State created an opportunity for the jurors' minds to run rampant pondering what other crimes Jasper might have committed. Further, the ambiguous posture of the State's questioning undermines its M.R.E. 404(b) argument that it was trying to show knowledge or intent. The State simply wanted to leave the question of the previous felony in the minds of the jurors by strategically asking that question last.

¶28. Also, after this question was asked and answered, no M.R.E. 403 balancing analysis was done, and no limiting instruction was given by the judge as required by this Court in *Smith*.

¶29. Therefore, we hold that the admission of Jasper's prior felony conviction and the trial court's failure to instruct the jury *sua sponte* were reversible error in violation of this Court's holding in *Smith* and require reversal and remand for a new trial.

### IV. THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND INSUFFICIENT AS A MATTER OF LAW.

¶30. We find that this point is moot in light of our disposition of the previous issue.

### CONCLUSION

¶31. The State was justified in its race-neutral peremptory challenge of Judia McDonald, due to her 25 year association with Jasper's mother. Further, while the trial judge may have overstepped his bounds with regard to his actions regarding witness Billy Cooper, his conduct did not rise to the level of improperly interjecting himself into the proceedings so as to require reversal. The trial court did, however, commit reversible error when it allowed the State to ask Jasper about a prior felony conviction without a proper justification and without the benefit of a limiting instruction. Therefore, the judgment of the Jones County Circuit Court is reversed and this case is remanded for a new trial.

¶32. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J., McRAE AND MILLS, JJ. SMITH, J.,**

## DISSENTS WITH SEPARATE WRITTEN OPINION.

## BANKS, JUSTICE, CONCURRING:

¶33. I concur with the result reached by the majority and its rationale, I write separately to emphasize a couple of points.

¶34. With regard to the **_Batson_** issue, it is clear, when its action is viewed in context, that the trial court found that the reason for striking the potential juror was race neutral. It is also clear that, on the record, this implicit finding is amply supported. The prospective juror was a friend of the mother of the defendant. This type of prospective juror is typically subject to a peremptory challenge without regard to race.

¶35. My reason for saying more is to note that this is not a case which involves factual allegations which are not clearly shown in the record or about which there is dispute such that our rule in **Hatten v. State,** 628 So. 2d 294 (Miss. 1993), is invoked. **Hatten** requires an on record finding of fact with regard to the factual merit of the reasons proffered for exercising a strike where the evidentiary support for such reasons are not manifest in the record or are contested. **Id**. at 298. Here, the facts of the relationship between the juror and the mother are uncontroverted and on record. Thus, there is no occasion for a **Hatten** finding.

¶36. As to the prior felony testimony, it is clear that the prosecutor sought to make an end run to place clearly inadmissible information before the jury. The fact that Jasper had been previously convicted of a felony clearly has no relevance to the issues of knowledge and motive. If this testimony was to be admitted at all, it was to be admitted under M.R.E 609. It was the defense objection under Rule 609 that the prosecutor sought to evade. Considered under that rule, the evidence flunks the applicable test. The previous conviction was for grand larceny, the same crime for which the defendant was on trial. Thus, the prejudicial effect outweighs the probative value that the conviction has on the issue of veracity. **Hopkins v. State**, 639 So. 2d 1247, 1255 (Miss. 1993)("In any instance where the previous conviction is of a crime similar to the one charged and under consideration, the potential for undue prejudice is great."); **Peterson v. State**, 518 So. 2d 632, 637 (Miss. 1987)(The jury is very likely to infer present guilt from a past conviction for a similar offense).

## PRATHER, C.J., McRAE AND MILLS, JJ., JOIN THIS OPINION.

## SMITH, JUSTICE, DISSENTING:

¶37. I agree that the State erred in only asking Steve Jasper if he had ever been convicted of a felony without soliciting proof of Jasper's conduct underlying the prior conviction which would have been necessary in order for the State to be able to show knowledge and motive as the State claimed was its reason for asking about the prior conviction. It is equally clear that the trial court erred in not conducting a M.R.E. 403 balancing analysis regarding the issue of the admissibility of the prior conviction and in failing to give a limiting instruction.

¶38. However, in my view, the error notwithstanding, because of the overwhelming proof of guilt in this case the error here is harmless beyond a reasonable doubt. **_Kircher v. State_**, No. 97-KA-01120-SCT, 1999 WL 818283 at *10 (Miss. Oct.14, 1999), (citing **_Watts v. State_**, 717 So. 2d 314 (Miss. 1998)). _See also_, **Mack v. State**, 650 So. 2d 1289, 1313 (Miss. 1994); **West v. State**, 463 So. 2d 1048, 1051 (Miss. 1985). In both **Mack** and **Watts**, the State sought to introduce evidence of other crimes without a

M.R.E. 403 analysis by the trial court or the granting of a limiting instruction, however, because of the overwhelming evidence of guilt of the defendants, the Court found the error to be harmless.

¶39. Here, the State produced eyewitness testimony regarding the theft of an entire truck load of furniture from Crocker's Inc., on June 11, 1997. Jasper had no alibi, could not remember his whereabouts on June 11, 1997 and acknowledged that he had never touched the stolen truck. Jasper's left middle fingerprint was lifted from the window panel of the stolen truck and was specifically identified as being Steve Jasper's fingerprint by the State's expert. A friend of Jasper, Billy Cooper, testified that Jasper had come to his house in June, 1997, and borrowed Cooper's truck and when Jasper returned some four or five hours later, there was a table and four chairs on the truck, which Jasper, without explanation, left at Cooper's house. Cooper also testified that he and Jasper later went to some woods outside of Ellisville and retrieved a table and six chairs and took these items to the home of Cooper's sister.

¶40. In view of the overwhelming evidence of guilt in this case, the error is harmless. The lone question of whether Jasper had ever been convicted of a crime and his response of, "Yes," would not have adversely influenced the jury in view of the overwhelming evidence of guilt. I would affirm the trial court.

¶41. I respectfully dissent.

1. The Assistant District Attorney in his question mentioned only "a felony" when in fact Jasper was indicted as an habitual offender, having been previously found guilty of grand larceny in 1992 and 1989.