IRVING, J.,
 

 for the Court:
 

 ¶ 1. Virgil N. Johnson was convicted in the Hinds County Circuit Court of aggravated assault. He was sentenced to twenty years in the custody of the Mississippi Department of Corrections. Aggrieved, Johnson appeals and asserts (1) that he was denied his right to a speedy trial, (2) that the trial court erred in allowing certain testimony, (3) that the trial judge exhibited bias, (4) that the trial court erred in refusing to grant his for-cause challenge, and (5) that the trial court erred in granting one of the State’s jury instructions.
 

 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. On February 28, 2006, Jeremy Boyd was shot four times at his home in Jackson, Mississippi. Boyd, an acquaintance of Johnson, made four pretrial identifications of Johnson as the perpetrator. The first identification was made to Officer Charles Banks of the Jackson Police Department (the JPD), the first officer to arrive at the scene; the second was made to Officer Tommy Nelson of the JPD while Boyd was at the hospital where he had been taken for treatment; the third was made to JPD Officer Kent Daniels; and the fourth identification was made from a photographic lineup. On April 20, 2006, Johnson was arrested, and later indicted, for the aggravated assault of Boyd. He went to trial on March 11, 2008, and was convicted as charged.
 

 ¶ 4. At trial, Boyd testified as to what had transpired on February 28, 2006. According to Boyd, he invited Johnson over to his house because he had planned to purchase a vehicle and wanted Johnson’s
 
 *12
 
 assistance. When Johnson arrived, Boyd, a professional barber, offered to give him a haircut. Boyd stated that after the haircut, Boyd played a video game and that the two of them smoked marijuana. Boyd testified that Johnson then became quiet, so he asked Johnson if he was all right. Johnson told him that he was. Satisfied with Johnson’s response, Boyd testified that he turned around and continued to play the video game. Boyd recalled that his gun was on the floor near his feet and that “out of the corner of [his] eye” he saw Johnson get up. Boyd said that he assumed Johnson was going to the bathroom but that Johnson came up behind him and shot him in the back of his neck with Boyd’s own gun. Boyd testified that Johnson immediately shot him again. Boyd also testified that Johnson shot him two more times, even though he was playing dead at that point. Boyd further stated that Johnson flipped him over and started rifling through his pockets. Boyd testified that Johnson took $1,900 that he had in his pocket — money that he had planned to use to purchase the vehicle. Boyd stated that Johnson then fled the scene. Boyd used his cellular telephone to call for help.
 

 ¶ 5. Officers Banks and Nelson testified that Boyd stated that Johnson had inflicted the gunshot wounds upon him.
 

 ¶ 6. Additional facts, if necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 1. Speedy Trial
 

 ¶ 7. Johnson contends that his statutory, state, and federal constitutional rights to a speedy trial were violated. A criminal defendant is afforded the right to a speedy trial by the Sixth and Fourteenth Amendments to the United States Constitution and by Article 3, Section 26 of the Mississippi Constitution of 1890.
 
 Brengettcy v. State,
 
 794 So.2d 987, 991 (¶ 7) (Miss.2001) (citing
 
 Beavers v. State,
 
 498 So.2d 788, 789 (1986)). Further, “[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.” Miss.Code Ann. § 99-17-1 (Rev.2007). We separately address Johnson’s speedy-trial arguments as they relate to his statutory and constitutional rights.
 
 [1]
 

 a. Statutory Right
 

 ¶ 8. Pursuant to section 99-17-1, for purposes of the 270-day rule, the time begins to run at arraignment. Johnson was arraigned on April 16, 2007, and, as noted, went to trial on March 11, 2008. However, on April 4, 2007, twelve days before his arraignment, Johnson asserted his right to a speedy trial. The record reflects that Johnson’s first trial setting was July 16, 2007; his second trial setting was November 5, 2007; and his third trial setting was March 10, 2008, one day prior to his trial date.
 

 ¶ 9. On the first day of his trial, Johnson sought to have his case dismissed due to a speedy-trial violation. The trial judge asked Johnson’s attorney to explain the prejudice that Johnson had suffered as a result of the delay. Johnson’s attorney asserted that Johnson: (1) suffered from being incarcerated, because he could not make bond,
 
 for
 
 a crime that he contended he did not commit; (2) was unable to work
 
 *13
 
 as a result of his incarceration; (3) could not see his child or provide any financial support to the child; (4) was prevented from pursuing his GED; and (5) was prevented from caring for his sick mother. Thereafter, the trial judge stated:
 

 The Court is going to deny the motion to dismiss for failure to provide a speedy trial. The Court is convinced by the arguments of the State. The Court also recognizes that in Hinds County there has [sic] been delays caused by backlogs of cases. That there were cases older than this case and still are older cases than this case, and the defendant is being brought to trial in a timely manner. The Court acknowledges the request of Mr. Johnson for a speedy trial for reduction in bond, and he did have a $50,000 bond. The mere fact that he could not make the bond is not a prejudice. It’s a personal issue.
 

 Johnson argues that the reason for the delay given by the trial judge is insufficient. A crowded docket has been recognized as a reason that constitutes good cause for delay.
 
 See State v. Magnusen,
 
 646 So.2d 1275, 1282 (Miss.1994) (citing
 
 Polk v. State,
 
 612 So.2d 381, 387 (Miss.1992)). Nevertheless, an overcrowded docket will not automatically suffice to establish good cause, as good cause must be determined by evaluating the specific facts of each case.
 
 Id.
 
 (citing
 
 McGee v. State,
 
 608 So.2d 1129,1133 (Miss.1992)).
 

 ¶ 10. Even if we were to conclude that, because of the congested trial docket, good cause existed for the State’s failure to bring Johnson to trial within 270 days of his arraignment, there remains the question of whether a violation of section 99-17-1 occurred because no order was entered on the trial docket. In this regard, we note that Johnson had three trial settings, two of which were within 270 days of his arraignment and the first being just three months following his arraignment.
 
 [2]
 
 We also note that the trial judge, in denying Johnson’s motion to dismiss, stated that “[t]he delay comes only out of necessity and the backlog of eases that may have been tried on the dates that he previously had his trial setting.” While the trial judge used the phrase “may have been tried,” we do not interpret this to mean that the cases that were set ahead of Johnson’s were not tried. Therefore, since Johnson’s case was twice set for trial prior to the running of the 270-day period, and since the trial judge found good cause for Johnson’s case not being tried, although the finding came on the back end rather than on the front end when the case was continued, the question is whether these facts are sufficient to support a finding that section 99-17-1 was not violated. As we will explain, we find that they are.
 

 ¶ 11. As noted, section 99-17-1 requires that a defendant be tried within 270 days of his arraignment “[u]nless good cause be shown, and a continuance duly granted by the court....” Here, the trial judge did not enter an order or continuance specific to this case. However, it appears that there was a standing order or practice that all cases that were set for trial on a specific day in a backup position would be automatically continued to another day or term of court if the case that was set ahead of it went to trial. That appears to be what happened here. Section 99-17-1 does not specifically require that any continuance
 
 *14
 
 that is granted by the court be in the form of a written order, only that the continuance be “duly granted by the court.” Here, based on the trial judge’s comments, it is clear that, by operation of either a standing order or practice known to the bar, all cases that were set on a specific day in a position other than the first were continued by the trial court if the case set ahead of it went to trial. While we do not condone this practice, we cannot say on the unique facts of this case that Johnson was denied his statutory right to a speedy trial. While it is clear that he was not tried within 270 days, it is also clear that the reason for the delay was the congested trial docket. Moreover, Johnson has shown no prejudice to his ability to mount a defense as a result of the delay. Therefore, we find no merit to this issue.
 

 b. Constitutional Right
 

 ¶ 12. In
 
 Barker,
 
 407 U.S. at 530, 92 S.Ct. 2182, the United States Supreme Court announced four factors that should be considered when determining whether a criminal defendant has been denied his right to a speedy trial. The factors are: (1)“length of delay,” (2) “the reason for the delay,” (3) “the defendant’s assertion of his right,” and (4) “prejudice to the defendant.”
 
 Id.
 
 Also, in
 
 Smith v. State,
 
 550 So.2d 406, 408 (Miss.1989), our supreme court stated that a delay of eight months or more is presumptively prejudicial. Further, the
 
 Smith
 
 court stated that the length-of-delay factor under
 
 Barker
 
 operates as a “triggering mechanism.”
 
 Id.
 
 We now proceed with an analysis of the
 
 Barker
 
 factors.
 

 (1) Length of Delay
 

 ¶ 13. In determining whether there has been a constitutional violation of a defendant’s right to a speedy trial, the computation of time begins with the date of the defendant’s arrest.
 
 Murray v. State,
 
 967 So.2d 1222, 1230 (¶ 23) (Miss. 2007) (citing
 
 Atterberry v. State,
 
 667 So.2d 622, 626 (Miss.1995)). As noted, Johnson was arrested on April 20, 2006, and was tried on March 11, 2008. Therefore, 680 days elapsed between the date of Johnson’s arrest and the date of his trial. Accordingly, because more than eight months elapsed between the date of Johnson’s arrest and the date of his trial, we find that the delay is presumptively prejudicial, requiring us to proceed with an analysis of the remaining
 
 Barker
 
 factors.
 

 (2)Reason for Delay
 

 ¶ 14. The record is clear that the reason for the delay in bringing Johnson to trial was the backlog of cases that Hinds County was experiencing at the time. It is well settled that delays caused by overcrowded dockets are weighed against the State, although not heavily.
 
 McGhee v. State,
 
 657 So.2d 799, 802 (Miss. 1995) (citing
 
 Adams v. State,
 
 583 So.2d 165 (Miss.1991)). Therefore, we weigh this factor slightly against the State.
 

 (3)Johnson’s Assertion of his Right to Speedy Trial
 

 ¶ 15. Johnson asserted his right to a speedy trial on April 4, 2007, or 349 days after his arrest and a little over eleven months before he was brought to trial. Therefore, this factor favors Johnson,
 

 ft)
 
 Prejudice to Johnson
 

 ¶ 16. Johnson sets forth in his brief the same reasons regarding how he was prejudiced that his attorney provided to the court during the hearing on his motion to dismiss. “The accused is not required to put forth an affirmative showing of prejudice to prove his right to a speedy trial was violated. Nevertheless,
 
 an absence of prejudice weighs against a finding of a violation.” Murray,
 
 967 So.2d at 1232 (¶ 30) (quoting
 
 Atterberry,
 
 
 *15
 
 667 So.2d at 627). We find, as did the trial judge, that Johnson’s right to a speedy trial was not violated, as we are unable to discern any prejudice to Johnson caused by the delay. Even though Johnson was presumptively prejudiced because of the length of the delay, the clear evidence is that he was not actually prejudiced. While Johnson argued that he was prejudiced in several ways, none dealt with an impairment to his ability to vigorously defend against the charges. Therefore, we cannot find that Johnson’s constitutional right to a speedy trial was violated.
 

 2. Admission of Officer Banks’s Testimony
 

 ¶ 17. In this issue, Johnson contends that the trial court erred by allowing Officer Banks to testify that Boyd had told Officers Banks and Nelson that Johnson was the person who had shot him. As stated, Boyd identified Johnson as the shooter to both Officers Banks and Nelson. At trial, Johnson objected on the basis that the elicited testimony was hearsay that did not fall within any hearsay exception. The trial judge overruled the objection.
 

 ¶ 18. Boyd was the State’s first witness and was subjected to cross-examination. He testified that Johnson was the person who had shot him. Thus, the jury had already heard Boyd identify Johnson as the shooter before Officer Banks took the stand. Accordingly, because Officer Banks merely repeated what Boyd had already testified to, any error committed by the trial judge in allowing the officer to testify in this regard is harmless.
 

 S. Bias
 

 ¶ 19. Johnson also argues that he is entitled to a new trial because the trial judge exhibited bias by suggesting to Officer Daniels how to avoid a hearsay objection. The following transpired at trial:
 

 Q. And once you got to the location, what did you do?
 

 A. Upon arriving at the location when I first got there, I was briefed by a patrol officer who responded to the scene first before they notified the detective. Got to the scene, the officer told me that—
 

 [ATTORNEY FOR DEFENDANT]: Your Honor, we’d object to what the officer told him, hearsay.
 

 THE COURT: Objection sustained, Counsel. Just use terms of what you learned from your investigation and that will—
 

 THE WITNESS: Yes, Your Honor, thank you.
 

 THE COURT: — keep you out of the hearsay. Hold on, let me finish. And you’ll stay out of the area of hearsay. Just tell what you learned as result of your investigation.
 

 THE WITNESS: Thank you, Your Honor.
 

 ¶ 20. Johnson cites
 
 Jasper v. State,
 
 759 So.2d 1136 (Miss.1999),
 
 Nichols v. Munn,
 
 565 So.2d 1132 (Miss.1990), and
 
 West v. State,
 
 519 So.2d 418 (Miss.1988) for the proposition that it is impermissible for a trial judge to interject herself into a trial. In
 
 Jasper,
 
 a police officer testified, on direct examination, that he had recovered stolen property from an individual by the name of Billy Cooper.
 
 Jasper,
 
 759 So.2d at 1139 (¶ 18). Then, on redirect, the State asked the officer whether he had learned that Cooper had received the property from the defendant, Steve Jasper.
 
 Id.
 
 Jasper’s attorney objected and moved for a mistrial on the ground of hearsay, as Jasper’s attorney argued that Cooper was the proper person to answer that question.
 
 Id.
 
 The State suggested that the testimony be stricken and that the jury be instructed to disregard it.
 
 Id.
 
 At
 
 *16
 
 that point, the trial judge ordered the jury out of the courtroom.
 
 Id.
 
 Outside of the presence of the jury, a discussion was held regarding the impropriety of the State’s question and the possible remedies to cure the hearsay.
 
 Id.
 
 at 1139-40 (¶ 19). Jasper’s attorney moved for a directed verdict, asserting that “absent the testimony of Billy Cooper, the State was unable to prove their case without the benefit of [the officer’s] hearsay testimony.”
 
 Id.
 
 at 1140 (¶ 19). The trial judge asked the State whether it had issued a subpoena for Cooper. Then, the trial judge stated:
 

 Do ya’ll have a tag number? Put an all points bulletin out for him. Get a court order that he’s evading process or do anything. Otherwise, you’re gonna lose this case. And I’m not gonna take the blame for it.... Well, let’s just get an instanter out on him. And that way when you get him, you bring him to me. If I get him, I’ll know what to do with him.
 

 Id.
 

 ¶21. The Mississippi Supreme Court found that the trial judge did not directly interject himself into the case and merely, outside of the presence of the jury, attempted to “inform the State that it would need the testimony of Cooper in order to corroborate the hearsay testimony offered by [the officer].”
 
 Id.
 
 at (¶ 20). Based on the finding of the Mississippi Supreme Court that the trial judge did not interject himself into Jasper’s trial, we fail to see how
 
 Jasper
 
 lends Johnson any support.
 

 ¶ 22. Johnson also directs our attention to
 
 West
 
 and
 
 Nichols,
 
 which were cited by the
 
 Jasper
 
 court. In
 
 West,
 
 519 So.2d at 418, the Mississippi Supreme Court reversed a defendant’s murder conviction, finding that the trial judge became actively involved in the case. Specifically, the supreme court held:
 

 We have carefully examined the eight-volume record and find that there are thirty (30) instances where the trial judge improperly, or unnecessarily, interjected himself into the proceedings. Of those thirty instances, twenty are of the type which may be characterized as coaching the district attorney. On nine occasions, the trial judge posed questions to witnesses where the district attorney’s questions were ineffective. The questions by the trial judge generally served to strengthen the prosecution’s case.
 

 Id. at 421.
 

 ¶ 23. In
 
 Nichols,
 
 565 So.2d at 1135, the trial judge extensively questioned an expert witness doctor regarding injuries allegedly sustained by a plaintiff. The trial judge also questioned the plaintiff regarding previous accidents that he had been involved in.
 
 Id.
 
 at 1135-36. Our supreme court held that “the circuit judge was clearly wrong in the manner in which he injected himself into this lawsuit....”
 
 Id.
 
 at 1137. The court also stated that “there was no necessity for his quite open display of incredulity before the jury both of the plaintiffs case and of the plaintiff himself.”
 
 Id.
 

 ¶ 24. Here, the trial judge’s comment to Officer Daniels can hardly be compared to the conduct committed by the trial judges in
 
 West
 
 and
 
 Nichols;
 
 therefore, we find Johnson’s reliance on them misplaced. The trial judge merely instructed Officer Daniels to state what he learned from his investigation. This act can hardly be viewed as interjecting herself into the lawsuit. There is no merit to this issue.
 

 ⅛. Challenges
 

 ¶ 25. Johnson contends that the trial judge erred in failing to grant his for-cause challenges of two prospective jurors. In
 
 Duncan v. State,
 
 939 So.2d 772, 778-79
 
 *17
 
 (¶ 22) (Miss.2006) (citing
 
 Caston v. State,
 
 823 So.2d 473, 499 (¶ 93) (Miss.2002)), our supreme court held that “the trial court is empowered with broad discretion to determine whether a prospective juror can be impartial — notwithstanding the juror’s admission under oath as to his or her ability to [be] impartial.”
 

 ¶26. The following exchange occurred during voir dire by Johnson’s attorney:
 

 My first question is this, when you walked through that door today, how many of you looked at Virgil Johnson and said to yourself, I wonder what he did. Not what he’s charged with, but I wonder what he did? And this is one that requires you obviously as all questions to be very truthful and sometimes do some soul searching.
 

 Would you raise your hand if when you walked through that door or at any time since then you said to yourself I wonder what he did?
 

 Would you raise your hand? This is Mr. Phillips. Yes, tell us what did you think.
 

 MR. PHILLIPS: I think the most personal thing. I walked in the door, and I asked myself the same question you said. I mean I didn’t chew on it or anything, but I just — you know, it was kind of my initial reaction.
 

 [ATTORNEY FOR DEFENDANT]: All right. Well let me ask you this. By thinking that, did you think he had done something?
 

 MR. PHILLIPS: I guess so sitting on that side of the table. I mean, you know, I just assumed to be the ease.
 

 [ATTORNEY FOR DEFENDANT]: Now, when you said — did you assume it was a case involving an alleged crime?
 

 MR. PHILLIPS: Yes.
 

 [ATTORNEY FOR DEFENDANT]: And why did you assume that?
 

 MR. PHILLIPS: I assumed we’re in criminal court. I assumed it was a criminal matter he’s being charged with.
 

 [[Image here]]
 

 [ATTORNEY FOR DEFENDANT]: All right. Others? Mr. Stevens?
 

 * * *
 

 MR. STEVENS: Yes. I kind of assumed that probably he was involved in some type of crime.
 

 [ATTORNEY FOR DEFENDANT]: Now, I think you were a former police officer; is that correct?
 

 MR. STEVENS: Correct.
 

 [ATTORNEY FOR DEFENDANT]: I’m sorry?
 

 MR. STEVENS: Right, uh-huh (affirmative).
 

 [ATTORNEY FOR DEFENDANT]: Why did you assume that?
 

 MR. STEVENS: Just by surveilling the area and what’s going on. Just like you said, we’re in Court, so you assume that there’s a defendant, there’s a prosecutor. And just looking at both tables, you just assume that okay, that must be the defense on that side, this must be the prosecution on this side. Just putting those two things together and coming up with that scenario.
 

 [ATTORNEY FOR DEFENDANT]: But you said you assumed he did something, not assumed he was charged with something. I think you said you assumed he did something, am I correct?
 

 MR. STEVENS: Right.
 

 [ATTORNEY FOR DEFENDANT]: And what I’m asking you why did you make that assumption other than what you’ve just described?
 

 
 *18
 
 MR. STEVENS: Not necessarily that he had done something. I understand that probably that table was, like I said, the defendant’s table, and this table was probably the prosecution’s table.
 

 Thereafter, Johnson’s attorney challenged Phillips for cause, asserting that Phillips could not be fair and impartial. The trial judge declined to strike Phillips, concluding that “simply wondering what somebody did is not enough to strike them from the jury without more.” Similarly, the trial judge refused to strike Stevens, concluding that Stevens did not indicate that he could not be fair and impartial. Thereafter, Johnson’s attorney used two of his peremptory strikes to keep Phillips and Stevens off of the jury. Therefore, even though the trial judge refused to allow Johnson’s attorney to strike Phillips and Stevens for cause, they were ultimately excluded from the jury. Accordingly, Johnson fails to show how he was prejudiced as a result of the trial judge’s ruling, as Johnson makes no argument that he planned to use the peremptory challenges to exclude other jurors. This issue lacks merit.
 

 5. Jury Instruction
 

 ¶ 27. In his final issue, Johnson argues that the trial judge erred by allowing jury instruction S-3 to be read to the jury. Johnson contends that instruction S-3 is not a proper statement of the law and improperly comments on Boyd’s identification of Johnson as the perpetrator. Johnson’s attorney objected when the State sought to offer instruction S-3. Thereafter, Johnson’s attorney, the State, and the trial judge worked together to come up with an instruction that both sides could agree upon. Then, the trial judge allowed the State to read the following version of S-3 to the jury:
 

 The burden is on the State to prove beyond a reasonable doubt that the offense was committed and that the defendant was the person who committed it. You have heard evidence regarding the identification of the defendant as the person who committed the crime. In this connection, you may consider the witness’s opportunity to observe the criminal act and the person committing it, including the length of time the witness had to observe the person committing the crime, the witness’s state of mind, and any other circumstances surrounding the event. You may also consider the witness’s certainty or lack of certainty, the accuracy of any prior description, and the witness’s credibility or lack of credibility, as well as any other factor surrounding the identification. You have heard evidence that prior to this trial, the witness, Jeremy Boyd, identified the defendant, Virgil Johnson, by viewing a photographic spread which contained his photograph.
 

 It is for you to determine the reliability of any identification and give it the weight you believe it deserves.
 

 ¶ 28. Johnson’s attorney mounted no further objection. Therefore, Johnson cannot now complain that the trial judge erred in allowing instruction S-3 to be read to the jury when he did not object at trial.
 
 See Brengettcy,
 
 794 So.2d at 997 (¶ 29) (citing
 
 Sanders v. State,
 
 678 So.2d 663, 670 (Miss.1996)). There is no merit to this issue.
 

 ¶ 29. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
 

 
 *19
 
 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT.
 

 [1]
 

 . The Mississippi Supreme Court has "not set a specific length of time as being per se unconstitutional [with respect to state constitutional claims], but instead have applied the four-part balancing test articulated by the U.S. Supreme Court in
 
 Barker v. Wingo,
 
 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).”
 
 Brengettcy,
 
 794 So.2d at 992 (¶ 10).
 

 [2]
 

 . There is no document in the record reflecting the trial settings, but during the hearing on Johnson’s motion to dismiss, the State advised the trial judge that, based on information contained in the court’s case-management system, Johnson had had three trial settings. Johnson’s attorney did not deny this fact but pointed out that there was no order reflecting the trial settings.